WESTMINSTER HOMES, INC.; JOHN AND SUSAN EVANS; BAKULESH AND VANDANA NAIK, PETITIONERS v. TOWN OF CARY ZONING BOARD OF ADJUSTMENT, RESPONDENT, AND JEFF THORNE AND LEIGH THORNE, INTERVENORS/RESPONDENTS

No. COA99-973

(Filed 19 September 2000)

**Zoning— conditional use ordinance—de novo review—prohibiting installation of gates in fence serving as buffer between subdivisions**

The trial court erred in its de novo review of the Cary Board of Adjustment's (Board) interpretation of a conditional use ordinance by concluding the Board's construction of the conditional use to prohibit the installation of gates by petitioners in a fence serving as a buffer along the tract of land between two subdivisions was a manifest error of law, even though the fence blocks homeowners from accessing part of their property, because: (1) the Board was not required to construe the conditional use consistent with any interpretation of any provision in the Cary

---

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

Ordinance based on the fact that the Cary Ordinance indicates that conflicting terms contained in a conditional use zoning provision shall not be compromised by the Cary Ordinance provisions; and (2) the primary goal underlying the conditional use, which was to create a barrier between the respective tracts of land, would be subverted by allowing gates as desired in the fence.

Appeal by intervenor respondents from order entered 24 March 1999 by Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 29 March 2000.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr. and Kathleen M. Thornton, for the petitioners-appellees.*

*Rosenthal & Putterman, by Charles M. Putterman, for the intervenor/respondents-appellants.*

LEWIS, Judge.

Intervenor/respondents Jeff and Leigh Thorne appeal the trial court's 24 March 1999 order reversing the Cary Board of Adjustment's determination that petitioners were in violation of a City zoning ordinance. We reverse the trial court's order and remand for entry of a new order consistent with this opinion.

Petitioners John and Susan Evans and Bakulesh and Vandana Naik own tracts of land in the Sherborne subdivision in Cary, North Carolina. They purchased the properties and their homes in December 1997 and June 1998, respectively, from petitioner Westminster Homes, Inc. ("Westminster"), which developed the Sherborne subdivision.

On 24 June 1998, a Zoning Code Enforcement Officer for the Town of Cary Division of Planning and Zoning issued violation notices to petitioners. The cited violation was that "a seven foot high fence located 45 feet off [the Evanses' and Naiks'] property line for protecting natural vegetation from damage, required by zoning condition Z-664-92-PUD, has been disturbed [as a result of installing gates in the fence]. No gates will be allowed in the fence."

Petitioners appealed from the notice of violation and on 10 August 1998, a hearing was held before the Town of Cary Zoning Board of Adjustment ("the Board"). At the hearing, evidence sur-

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

rounding the enactment and provisions of conditional use zoning permit Z-664-92-PUD ("the conditional use") was presented. The evidence indicated that the circumstances surrounding the conditional use originated in 1992, when Westminster petitioned the Town of Cary to have the Sherborne subdivision property rezoned to a higher density residential subdivision. Homeowners in Harmony Hills, an adjacent neighborhood, protested Westminster's rezoning request. After negotiations, the parties reached an agreement whereby Harmony Hills agreed not to contest the rezoning if Westminster and Sherborne subdivision residents agreed to certain restrictions set forth in the conditional use. In February 1993, the provisions of the conditional use were enacted by the Cary Town Council.

The conditional use requires a "fifty-foot [wide] undisturbed buffer" along the tract of land between Sherborne subdivision and Harmony Hills. Marking this undisturbed buffer is a "seven-foot [high] treated wood fence" required to be placed five feet into the buffer zone. The remaining forty-five feet of land behind the fence is part of petitioners Evanses' and Naiks' lots. Despite their awareness of the conditional use provisions requiring that the buffer zone behind the fence remain "undisturbed," both the Evanses and Naiks constructed gates in the seven-foot fence in order to access the forty-five foot portion of their lots. These gates are the subject of the violation notices issued by the Zoning Code Enforcement Officer. The conditional use contains several provisions relevant to the fence in which these gates were constructed:

> The fence shall be the same architecturally and of the same materials as the fence currently existing between Preston Woods and the McLaurin Tract . . . . The fence shall be installed with the minimum of disturbance to the buffer environment. The fence shall be connected at each end to the fences to be constructed under the respective agreements with Hester and McLaurin in order to preserve continuity and integrity. The fence will always be 45 [feet] from the boundary line or any property corner, and shall intersect at right angles . . . . The integrity and maintenance of this fence will be the responsibility of the developer [of Sherborne subdivision] or new owner. A deed disclosure and recorded plat shall be made by the developer so as to inform all new residents of the placement, integrity and maintenance of the new fence.

The conditional use requires the buffer zone to "remain in its present natural and undisturbed condition." Only one gate located at a sewer easement is specifically denoted as part of the conditional use; how-

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

ever, its location does not provide the Evanses and Naiks access to the back portion of their lots.

Based upon its interpretation of the language contained in the conditional use, the Board affirmed the decision of the Zoning Code Enforcement Officer, concluding the conditional use ordinance does not permit additional gates to be installed in the fence.

Petitioners sought review by filing a writ of certiorari on 20 October 1998. Before the case was heard, the trial court granted a motion to intervene filed by Jeffrey and Leigh Thorne, owners of a lot immediately adjacent to the petitioners' properties on the other side of the fence. On 15 March 1999, a hearing was conducted by the trial court, which entered a judgment reversing the decision of the Board and concluding petitioners are permitted to install gates in the subject fence. Intervenor/respondents now appeal.

When reviewing the decision of a board of adjustment, the trial court sits in the posture of an appellate court and is responsible for the following:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*In re Appeal of Willis*, 129 N.C. 499, 500, 500 S.E.2d 723, 725, (1998). If a petitioner contends the Board's decision was based on an error of law, *de novo* review is proper. *JWL Invs., Inc. v. Guilford County Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717, *disc. review denied*, 351 N.C. 357, —— S.E.2d —— (1999). However, if a petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the "whole record" test. *Id.* The role of appellate courts is to review the trial court's order for errors of law. *Willis*, 129 N.C. App. at 502, 500 S.E.2d at 726. "The process has been described as a two-fold task: (1)

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.*

Accordingly, we first decide whether the trial court exercised the appropriate scope of review. The issues presented for review at each stage of these proceedings relate to the proper interpretation of an ordinance, which presents a question of law. *Ayers v. Bd. of Adjust. for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201, *disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994). As such, *de novo* review is proper, requiring the court "to consider a question anew." *Willis*, 129 N.C. App. at 501, 500 S.E.2d at 725. We find the trial court applied the appropriate standard of review; thus, we now determine whether the trial court exercised *de novo* review properly. *Id.*

When a decision of a board of adjustment is reviewed *de novo*, it must be taken into consideration that

> one of the functions of a Board of Adjustment is to interpret local zoning ordinances, and . . . [such interpretation] is given deference. Therefore, our task on appeal is not to decide whether another interpretation of the ordinance might reasonably have been reached by the board, but to decide if the board acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law in interpreting the ordinance.

*Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999) (citations omitted). Upon *de novo* review of the record, we do not believe the Board's construction of the conditional use to prohibit the installation of gates by petitioners was a manifest error of law and conclude the trial court erred in reversing the Board's decision.

Intervenor/respondents first contest the trial court's conclusion that the conditions set forth in the conditional use are part of the general Cary Zoning Ordinance ("Cary Ordinance") and as a result, must be interpreted in a "consistent fashion" with the definitions set forth in the Cary Ordinance. The trial court reasoned because the term "fence" in the Cary Ordinance may be interpreted to include gates, the conditional use should also be construed to allow gates. Although intervenor/respondents concede the conditional use is part of the Cary Ordinance, they argue the Board was not required to define the term "fence" in a manner consistent with the Cary Ordinance. We agree.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

Intervenor/respondents point out that the purpose of conditional use zoning is to enable municipalities to impose more specific restrictions on particular land than provided in general ordinances, such as the Cary Ordinance. *See, e.g., Chrismon v. Guilford County*, 322 N.C. 611, 618, 370 S.E.2d 579, 584 (1988) ("[C]onditional use zoning occurs when a governmental body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning . . . [I]t permits . . . greater flexibility in balancing conflicting demands.") (citations omitted). The construction imposed by the trial court, they argue, contravenes the purpose of conditional use zoning. Although the stated purpose of conditional use zoning is helpful in establishing a backdrop for interpreting the conditional use, we are to construe municipal ordinances "according to the same rules as statutes enacted by the legislature." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). "The basic rule is to ascertain and effectuate the intent of the legislative body. . . . The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Id.* (citations omitted). Accordingly, we turn to the plain language of the Cary Ordinance in order to adequately review the trial court's conclusion.

Although the conditional use makes no reference to the Cary Ordinance, several provisions within the Cary Ordinance make clear conflicting terms contained in a conditional use zoning provision shall not be compromised by the Cary Ordinance provisions. In the section entitled "Definitions and Rules of Construction," the Cary Ordinance states, "In the event of any conflict between the limitations, requirements, or standards contained in different provisions of this Ordinance and applying to an individual use or structure, the more restrictive provision shall apply." This provision clearly contemplates the case where a later-adopted conditional use made part of the ordinance imposes more restrictive limitations which may even conflict with the general ordinance provisions. Furthermore, the section entitled "Special Provisions for Conditional Use Districts" provides that "[n]o condition shall be made part of the application which states that the use of the property will be subject to regulations or restrictions set forth in this Ordinance which would apply to the property in any event." This provision clearly indicates the purpose of a conditional use district is to impose alternate regulations not applying under the general provisions. The Cary Ordinance clearly does not

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[140 N.C. App. 99 (2000)]

establishment a *requirement* that later-adopted conditional use provisions adopt identical interpretations for the terms used in the Cary Ordinance. Accordingly, the Board was not required to construe the conditional use consistent with any interpretation of any provision in the Cary Ordinance. We conclude the trial court's construction of the conditional use in this respect was error.

Next, intervenor/respondents argue the trial court erred in concluding that by enacting the conditional use the Town of Cary did not intend to prohibit gates in the fence. In order to ascertain the intent behind the conditional use, we turn first to its language as we would for any other ordinance provision. *Concrete Co.*, 299 N.C. at 629, 265 S.E.2d at 385. Although the conditional use does not provide its own definition of the term "fence," its provisions make clear that the requisite fence does not allow gates. The conditional use requires the fence to be "connected at each end to the fences to be constructed under the respective agreements with Hester and McLaurin in order to *preserve continuity and integrity*," as well as "the same architecturally and of the same materials as the fence currently existing between Preston Woods and the McLaurin tract." The fence between Preston Woods and the McLaurin tract does not have gates. The language of the conditional use clearly refers to a contiguous fence constructed on an undisturbed buffer. It makes no indication that any new gates could or would be constructed; the only gate mentioned is a previously existing gate at the sewer easement. These provisions must be viewed in light of the goal of compromise surrounding enactment of the conditional use; namely, higher density zoning in Sherborne subdivision in exchange for the requisite buffer zone and fence for Harmony Hills residents.

The trial court also concluded prohibiting gates in the fence produces absurd and illogical results, since it blocks homeowners from accessing their property. *See, e.g., Ayers v. Bd. of Adjust. for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201 (1994) (holding courts must avoid statutory interpretations that "create absurd or illogical results"). More important, however, is that the primary goal underlying the conditional use, which was to create a barrier between the respective tracts of land, would be subverted by allowing gates as desired in the fence. With this goal in mind, it is easily concluded that *permitting* gates would create an absurd and illogical result. The trial court also concluded this provision must be construed in favor of the landowner and free use of the property. We note that in reaching an agreement as to the conditional use, the par-

NATIONSBANK OF N.C. v. PARKER

[140 N.C. App. 106 (2000)]

ties of Sherborne subdivision willingly gave up certain of their rights in exchange for a restricted rezoning. Petitioners concede they were made aware of these provisions upon purchase of their property.

Based upon the language contained in the conditional use, the backdrop surrounding its enactment and the substantial discretion on the part of the Board, the Board's conclusion that gates are not permitted under the terms of the conditional use was not a manifest error of law. Thus, we conclude the trial court improperly exercised its scope of review in reversing the Board's decision.

Because of our disposition, we need not address the remaining assignments of error. We note, however, there may be alternative means for petitioners to attain permission to install gates in the requisite fence. For instance, the parties may attempt to seek a variance if they can demonstrate practical difficulty or unnecessary hardship as a result of application of the Cary Ordinance provisions. Nonetheless, the Board did not commit an error of law when interpreting the ordinance, and as such, the trial court erred in reversing the Board's decision. The order of the trial court is reversed and this matter remanded to that court for entry of a new order in accordance with our opinion.

Reversed and remanded.

Judges MARTIN and WALKER concur.