BAILEY AND ASSOCIATES, INC., PETITIONER v. WILMINGTON BOARD OF ADJUST-
MENT AND CITY OF WILMINGTON, RESPONDENTS, AND JOHN BLACKWELL AND
WIFE, ELIZA BLACKWELL; VICTOR BYRD AND WIFE, CAROLYN BYRD; VISHAK
DAS AND WIFE, TRACY DAS; BILL DOBO AND WIFE, BARBIE DOBO; BOB DOBO
AND WIFE, JEAN DOBO; BARBIE DOBO; BUTCH DOBO AND WIFE, SHELLY DOBO;
PATRICK EDWARDS AND WIFE, KIM EDWARDS; MATT EPSTEIN AND NINA
BROWN; EARL GALLEHER AND WIFE, LAUREN GALLEHER; BARBARA GUARD
AND HUSBAND, RON GUARD; GLENDA FLYNN; JANE HARDWICK; L.T. HINES AND
WIFE, JOY HINES; WRIGHT HOLMAN AND SUSAN KEYES; JIM LONG AND WIFE,
BESS LONG; ANN McCRARY; KENYATA McCRARY AND WIFE, GRACE McCRARY;
PEM NASH AND WIFE, GRETCHEN NASH; DONNA NOLAND; PAT PATTERSON
AND WIFE, MARY PATTERSON; DREW PIERSON AND WIFE, KNOX PIERSON;
DAVID POWELL AND WIFE, JANICE POWELL; ALLEN RIGGAN AND WIFE, PAM
RIGGAN; NANCY ROSE; ROLF SASS AND WIFE, JANIS SASS; BEN SPRADLEY AND
WIFE, SANDEE SPRADLEY; CHARLES SWEENY AND WIFE, JUNE SWEENY; SUSAN
SWINSON; GEORGE TURNER AND WIFE, SUE TURNER; JOYCE ZIMMERMAN;
NOAH ZIMMERMAN AND WIFE, KATHRYN ZIMMERMAN; ROBERT SMITH AND
WIFE, MARY SMITH, INTERVENOR-RESPONDENTS

No. COA09-18

(Filed 2 February 2010)

## 1. Appeal and Error— motion to dismiss—mootness

Petitioner's motion to dismiss intervenors' appeal on moot-
ness grounds was denied because intervenors' claim remained
viable even after the City of Wilmington repealed section 18-215
of its Land Development Code and added "Division III Conserva-
tion Resource Regulations."

## 2. Zoning— motion to intervene—properly granted

The trial court did not err in granting intervenors' motion to
intervene in a zoning ordinance case because intervenors alleged
sufficient special damages to support intervention pursuant to
N.C.G.S. § 160A-388(e2). Intervenors also satisfied the standards
for intervention pursuant to N.C.G.S. § 1A-1, Rule 24(a)(2) be-
cause the City of Wilmington could not adequately represent
intervenors' interests before the trial court.

## 3. Zoning— motion to dismiss appeal as untimely—issue not raised before the Board of Adjustment

The trial court did not err by denying intervenors' motion to
dismiss petitioner's appeal from the City of Wilmington's Techni-
cal Review Committee to the Board of Adjustment as untimely
pursuant to Wilmington City Code § 18-27. This argument was not
raised before the Board of Adjustment by any party, and the trial

court and appellate courts have statutory authority to review only those issues presented to the Board of Adjustment.

**4. Zoning— Rule 60 motion—issue not raised before the Board of Adjustment**

The trial court did not err in denying intervenors' motion for relief pursuant to N.C.G.S. § 1A-1, Rule 60 based on the alleged discovery of new evidence which would justify the trial court remanding petitioner's appeal to the Board of Adjustment for a new hearing and determination. As the trial court had jurisdiction over the appeal on the basis of a writ of *certiorari* seeking review of the Board of Adjustment's order, the trial court was acting as an appellate court rather than a trial court, and the motion could not properly be granted by the trial court.

**5. Zoning— judicial estoppel—issue not raised before the Board of Adjustment**

The trial court did not err by failing to hold that petitioner was judicially estopped from denying that it was subject to Wilmington's Conservation Overlay District restrictions because the trial court's scope of review on *certiorari* was limited to errors alleged to have occurred before the Board of Adjustment. Intervenor's failure to raise the issue of estoppel before the Board of Adjustment precluded the trial court and the Court of Appeals from considering intervenors' estoppel claim.

Appeals by Intervenor-Respondents and Petitioner from order entered 26 July 2008 by Judge John E. Nobles, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 10 June 2009.

*Shanklin & Nichols, LLP, by Matthew A. Nichols and Kenneth A. Shanklin, for Petitioner-Appellant and Appellee.*

*Law Office of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for Intervenor-Appellants and Appellees.*

ERVIN, Judge.

Bailey and Associates, Inc., (Petitioner) owns a 4.5 acre tract of property located at 201 Summer Rest Road in Wilmington, North Carolina, which is locally know as the "old Babies Hospital" (the Property). Intervenor-Respondents (Intervenors) own property that is located contiguous to or near the Property. Intervenors appeal from an order entered 26 July 2008 (1) allowing their motion to inter-

BAILEY & ASSOCS., INC. v. WILMINGTON BD. OF ADJUST.

[202 N.C. App. 177 (2010)]

vene, (2) denying their motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60, to remand this matter to the Board of Adjustment of the City of Wilmington (Board of Adjustment) and declining to hold that Petitioner was judicially estopped from challenging the Board of Adjustment's decision, (3) denying their motion to dismiss Petitioner's appeal as untimely, (4) reversing the 29 January 2008 decision of the Board of Adjustment denying Petitioner's appeal from the 7 August 2007 determination of Senior Environmental Planner Phillip Prete (Planner Prete) specifying that the Property was subject to the City of Wilmington's (City) Conservation Overlay District "performance controls," and (5) remanding the matter to the Board of Adjustment for the entry of an order reversing Planner Prete's 7 August 2007 determination that the Property was subject to the City's Conservation Overlay District "performance controls." Petitioner cross-appealed on the sole issue of whether the trial court erred by allowing Intervenors' motion to intervene on the grounds that Intervenors lack standing to intervene because they are not "aggrieved" persons pursuant to N.C. Gen. Stat. § 160A-388(e2). After careful consideration of the record in light of the applicable law, we affirm the trial court's order.

## I. Factual Background

Motts Creek, a saltwater marsh and stream, is located immediately before the bridge that crosses the Intracoastal Waterway and provides access to the Town of Wrightsville Beach. The Property adjoins Motts Creek. Prior to 24 March 2009, Section § 18-215 of the City's Land Development Code[1] designated certain areas as Conservation Overlay Districts in order "to protect important environmental and cultural resources within the City[.]" The City deemed such protection necessary "to maintain the City's diverse and ecologically important natural systems; to preserve the City's estuarine systems important for fin fishing and shell fishing; to provide open space; and to retain the City's archaeological and historical heritages." The development rules applicable to property located in or "associated with" Conservation Overlay Districts as of 2 February 1999 included stringent building setbacks, buffers, stormwater runoff controls, and other limitations on land use within protected areas. Intervenors argued before the Board of Adjustment that Motts Creek was located in a Conservation Overlay District, making the Property

---

1. As will be discussed in more detail below, the City repealed Conservation Overlay District § 18-215 and amended the Land Development Code by adding "Division III Conservation Resource Regulations" on 24 March 2009.

subject to these "performance controls." Petitioner, on the other hand, denied that Motts Creek was in a Conservation Overlay District.

In 2005, Petitioner began working on "The Sidbury," a development to be located on the Property. On 8 February 2005, Petitioner and various City planning staff members, including Kaye Graybeal (Graybeal), who then served as the Planning Manager, convened a "concept meeting" to review matters related to the proposed development. Although Planner Prete did not attend the 8 February 2005 "concept meeting," Ms. Graybeal consulted him after the meeting.

At that time, Ms. Graybeal and Planner Prete reviewed the Property using a Conservation Overlay Map and determined that Motts Creek was classified as "tidal waters," which "are not regulated as conservation resources by Section 18-215 of the Wilmington City Code," on that map. Ms. Graybeal e-mailed Petitioner on 8 February 2005, with a copy to Planner Prete, stating that "[n]o portion of the site is located within a conservation overlay district and is therefore not subject to the COD setback." Ms. Graybeal forwarded the email to Frank Smith (Smith), Petitioner's architect, with the additional indication that "the COD maps on file in the Planning Division indicate the adjacent water body designated as WTW[2] which is not listed as a protected resource in the ordinance."

After receiving this information, Petitioner continued to plan for the development of the Property. The City's Technical Review Committee (TRC) reviewed Petitioner's plans on 23 October 2006. After Petitioner requested confirmation of this determination in writing, Planner Prete e-mailed Petitioner on 7 August 2007 stating that the TRC had determined that the Property "is within the COD and subject to COD setbacks." In essence, the TRC determined that Motts Creek "is brackish tidal marsh" and "subject to the City COD controls[,]" which meant that all structures on the Property were "required to be setback 100 feet from the edge of the resource for non-residential development or 75 feet for residential development" and that "[a] vegetated buffer zone of 35 feet from the edge of the resource" would be necessary. Petitioner appealed this determination to the Board of Adjustment on 8 August 2007.

The Board of Adjustment heard Petitioner's appeal at a public hearing held on 18 October 2007. On 29 January 2008, the Board of Adjustment issued an order affirming the determination made by Planner Prete and the TRC. Petitioner sought review of the Board of

2. WTW represented the Conservation Overlay District code for tidal waters.

Adjustment's order in the New Hanover County Superior Court by filing a petition for writ of *certiorari* on 17 April 2008. Judge Allen W. Cobb issued the requested writ of *certiorari* on 17 April 2008 in order to allow consideration of Petitioner's contentions on the merits.

On 24 April 2008, Intervenors filed their proposed motion to intervene and a response to Petitioner's petition for writ of *certiorari*, which contended, among other things, that Petitioner's "appeal is time-barred." On 26 July 2008, the trial court entered an order allowing Intervenors' motion to intervene; denying Intervenors' motion for relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 60, or the doctrine of judicial estoppel; denying Intervenors' motion to dismiss Petitioner's appeal as untimely; reversing the 29 January 2008 order of the Board of Adjustment affirming the determination of Planner Prete and the TRC; and remanding the Board of Adjustment's 29 January 2008 order "for entry of an Order reversing . . . Planner Prete's . . . determination letter." From this order, both Petitioner and Intervenors appeal.

## II.  Motion to Dismiss

Before we address Intervenors' and Petitioner's substantive arguments on appeal, we must address Petitioner's motion to dismiss Intervenors' appeal on mootness grounds. We conclude that Intervenors' appeal is not moot.

On 24 March 2009, the City of Wilmington repealed former Section 18-215 and enacted a new ordinance entitled "Division III Conservation Resource Regulations" (Conservation Resource Regulations). The new ordinance includes the following "*Savings provision:*"

> (f) *Savings provision.* The Conservation Resource Regulations in this Division shall not affect any pending litigation or appeals involving the City's former Conservation Overlay District regulations (prior LDC Section 18-215 *et seq.*). The Conservation Resource Regulations shall not apply to any site plan application accepted by the City at the time of the adoption of this Division; provided, however, the applicant submits all documentation required for approval within two (2) years of the date of the completion of any pending litigation or the date of the site plan acceptance, whichever is the later date.

Wilmington, NC, Division III Conservation Resource Regulations (24 March 2009). Petitioner contends in its dismissal motion that the

repeal of former Section 18-215 and its replacement with Section 18-341 moots Intervenors' appeal.

"Jurisdiction in North Carolina depends on the existence of a justiciable case or controversy." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164, 552 S.E.2d 220, 225 (2001), *disc. review denied*, 356 N.C. 161, 568 S.E.2d 191 (2002) (quoting *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 544 S.E.2d 821 (2001); *Town of Pine Knoll Shores v. Carolina Water Serv.*, 128 N.C. App. 321, 494 S.E.2d 618 (1998)). " 'To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable[;] [m]ere apprehension or the mere threat of an action or suit is not enough.' " *Property Rights Advocacy Group v. Town of Long Beach*, 173 N.C. App. 180, 182, 617 S.E.2d 715, 717 (2005) (quoting *State ex rel. Utils. Comm'n v. Carolina Water Serv., Inc.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62-63 (2002) (internal quotation omitted)). "Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979).

As a general proposition, the "[r]epeal of a challenged law generally renders moot the issue of the law's interpretation or constitutionality." *See Property Rights Advocacy*, 173 N.C. App. at 183, 617 S.E.2d at 718 (citing *State v. McCluney*, 280 N.C. 404, 407, 185 S.E.2d 870, 872 (1972) (holding that the "repeal of [a statute] renders moot the question of its constitutionality" and that the "constitutionality of the [new] Act does not arise on this appeal [and] . . . will be decided if and when it is presented"). However, the repeal of a challenged statute does not have the effect of mooting a claim arising under that statute in the event that there is a reasonable possibility that the law will be reenacted following the dismissal of the legal challenge, *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 71 L. Ed. 2d 152 (1982), *followed by Thomas v. North Carolina Dep't of Human Resources*, 124 N.C. App. 698, 478 S.E.2d 816 (1996), or if the repeal of the challenged statute does not provide the injured party with adequate relief or the injured party's claim remains viable. *Lambeth v. Town of Kure Beach*, 157 N.C. App. 349, 352, 578 S.E.2d 688, 690 (2003) (holding that an appeal was not moot because the "amendment to the ordinance at bar . . . did not give [the petitioner] the relief

sought" so that the "[p]etitioner's claim and injury remain viable"). In this instance, the City's repeal of former Section 18-215 included a *"Savings provision"* which expressly provided that "[t]he Conservation Resource Regulations in this Division shall not affect any pending litigation or appeals involving the City's former Conservation Overlay District regulations (prior LDC Section 18-215 *et seq.*)" and would not "apply to any site plan application accepted by the City at the time of the adoption of this Division" so long as the "applicant submits all documentation required for approval within two (2) years of the date of the completion of any pending litigation or the date of the site plan acceptance, whichever is the later date." The *"Savings provision"* makes the new ordinance applicable on a prospective basis, expressly preserves Intervenors' appeal from the trial court's order, and preserves Petitioner's right to proceed to develop the Property on the basis of its prior application without having to comply with the new ordinance in the event that its site plan application had been accepted "at the time of the adoption of this Division." As a result, in the event that Intervenors successfully challenge the trial court's order, they will be entitled to have Petitioner required to comply with the "performance controls" specified in former Section 18-215 despite its repeal. Thus, given that Intervenors' claim remains viable, its appeal from the trial court's order is not moot and Petitioner's motion to dismiss Intervenors' appeal is denied. *See Lambeth*, 157 N.C. App. at 352, 578 S.E.2d at 690.

## III. Legal Analysis

On cross-appeal, Petitioner argues that the trial court erred by granting Intervenors' motion to intervene because (1) the Intervenors are not aggrieved parties pursuant to N.C. Gen. Stat. § 160A-388(e2) and (2) the Intervenors did not meet the standards required for intervention pursuant to N.C. Gen. Stat. § 1A-1, Rule 24. On appeal, Intervenors argue that (1) Petitioner's appeal to the Board of Adjustment should have been dismissed as untimely pursuant to Section § 18-27 of the City Code; (2) the trial court erred by entering an order denying Intervenors' motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60; and (3) the trial court erred by failing to apply the doctrine of judicial estoppel to preclude Petitioner from denying that the Property was subject to the rules applicable to Conservation Overlay Districts. After careful consideration of the record in light of the applicable law, we conclude that the trial court did not err in making any of these determinations.

### A. Petitioner's Appeal

**[1]** "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 20 L. Ed. 2d 947, 961 (1968)). "It is not necessary that a party demonstrate that injury has already occurred, but a showing of 'immediate or threatened injury' will suffice for purposes of standing." *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 642-43, 669 S.E.2d 279, 282 (2008) (quoting *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990) (internal citation omitted)).

N.C. Gen. Stat. § 160A-388(e2) authorizes an "aggrieved party" to seek review of decisions made by boards of adjustment under zoning ordinances. N.C. Gen. Stat. § 160A-388(e2); *see also Heery v. Highlands Zoning Bd. of Adjust.*, 61 N.C. App. 612, 613, 300 S.E.2d 869, 870 (1983). "An aggrieved party is one who can either show an interest in the property affected, or if the party is a nearby property owner, some special damage, distinct from the rest of the community[.]" *Allen v. Burlington Bd. of Adjust.*, 100 N.C. App. 615, 618, 397 S.E.2d 657, 659 (1990). Specifically, in the zoning context, this Court has stated:

> The mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use. If, however, the proposed use is unlawful, as where it is prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing to maintain such proceeding.

*Jackson v. Guilford Cty. Bd. of Adjust.*, 275 N.C. 155, 161, 166 S.E.2d 78, 82 (1969) (citations omitted).

In addition, "[N.C. Gen. Stat. § 1A-1,] Rule 24 governs intervention in all civil actions, including appeals pursuant to [N.C. Gen. Stat.] § 160A-388(e)." *Councill v. Town of Boone Bd. of Adjust.*, 146 N.C. App. 103, 107, 551 S.E.2d 907, 910, *disc. review denied*, 354 N.C. 360,

560 S.E.2d 130 (2001) (citing *Procter v. City of Raleigh Bd. of Adjust.*, 133 N.C. App. 181, 183, 514 S.E.2d 745, 746 (1999)). According to N.C. Gen. Stat. § 1A-1, Rule 24(a):

Upon timely application anyone shall be permitted to intervene in an action: . . .

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As a result, a party is entitled to intervene pursuant to N.C. Gen. Stat. § 1A-1, Rule 24(a)(2) in the event that he or she can demonstrate (1) an interest relating to the property or transaction, (2) practical impairment of the protection of that interest, and (3) inadequate representation of the interest by existing parties. *See Harvey Fertilizer & Gas Co. v. Pitt County*, 153 N.C. App. 81, 85, 568 S.E.2d 923, 926 (2002) (citing *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 683 (1999) (citations omitted)). This Court reviews a trial court's decision granting or denying a motion to intervene pursuant to N.C. Gen. Stat. § 1A-1, Rule 24(a)(2), on a *de novo* basis. *See Harvey*, 153 N.C. App. at 89, 568 S.E.2d at 929.

In this case, Intervenors contended that they were entitled to participate in this proceeding as a matter of right because they owned property that was "contiguous" to the "subject property" or in the "immediate vicinity" to the "subject property." According to Intervenors, the tracts of property owned by Petitioner and Intervenors were "located immediately and directly next to . . . Motts Creek," the body of water that Intervenors claim to be in a Conservation Overlay District under former Section 18-215. Intervenors described Motts Creek as a "brackish, saltwater tidal marsh." Intervenors used Motts Creek for canoeing, crabbing, kayaking, fishing, hiking trails, catching baitfish, and feeding ducks. Intervenors also claimed that Summer Rest Road was their "sole means of ingress and egress" to their properties. Intervenors stated in their intervention motion that:

If Petitioner is successful in setting aside enforcement of the COD zoning ordinance that applies to its property, the Intervenor-Respondents, especially the Contiguous Owners, will suffer spe-

cific, direct loss and damage to their properties and the use and enjoyment of the properties in the following ways:

(i) the density of any building on the Petitioner's property will necessarily be significantly increased if Petitioner does not have to satisfy the more restrictive setback lines required by the COD;

(ii) the COD regulations of protecting "important environmental and cultural resources within the City" such as Motts Creek and Motts Creek's "diverse and ecologically important natural systems" that are "important for fin fishing and shell fishing" as well as open space will be set aside allowing for more pollution and destruction of Motts Creek—the very creek in which the Intervenor-Respondents and their families recreate in;

(iii) with the heightened density afforded to Petitioner if the COD is not enforced, will come significantly increased traffic, light pollution, noise and other related pollution that will all lead to a pecuniary loss in the value of the Intervenor-Respondents' properties; and,

(iv) it will establish adverse precedent to the citizens and property owners in the City of Wilmington that **one informal, mistaken email by one employee for the City** can divest and strip the City of Wilmington of its legislative, zoning and police powers in enforcing its zoning ordinances such that rather than the Petitioner being purportedly harmed by such a mistake all of the remaining citizens and property owners in the City will be harmed—which is not allowed under the controlling law of North Carolina. *City of Raleigh v. Fisher*, 232 N.C. 629, 61 S.E.2d 897 (1950); *Hayes v. Town of Fairmont*, 130 N.C. App. 125, 502 S.E.2d 380 (1998).

Several of the individual Intervenors also testified before the Board of Adjustment about how they and their property would be injured in the event that Petitioner's development was not made subject to the "performance controls" mandated by the former ordinance. John Blackwell testified that "I live on the first house on the left on Summer Rest Road. . . . I have about 400 feet of property that borders Motts Creek and my living room[,] dining room, kitchen look out over the creek right towards where the project is being proposed." According to Mr. Blackwell, "I have three small children . . . and we were just out there on the creek last night feeding the ducks and enjoying the serenity and the beautiful area. . . . I think it would be a

shame to see a piece of property in such a prominent location be completely ignored as far as the [Conservation Overlay District] is concerned[.]" Jane Hardwick testified that "I am especially concerned about some of the wildlife that could be affected, and just feel like it is, you know, one of the few special places left in this county that we have counted on being protected by this conservation overlay." Robert Smith stated, "I think the City recognized the need to ensure that environmentally sensitive areas are regulated and protected. And, that's exactly what the code says, and it's for the benefit of the community." Smith opined that "[w]e have a kayak; we have a canoe; I walk my dog every morning around the creek overlooking it. It's a wonderful community resource, and there are reasons why we have a conservation overlay district and look to the City to uphold and support these limited resources." Earl Galleher testified that "[e]very single day when I drive by Motts Creek there's fishermen . . . catching bait, there's people out feeding the ducks, it is a constantly used resource, and that was our understanding of why the conservation overlay district line is there in the first place." Mr. Galleher stated that "[the Conservation Overlay District line] was placed there and we would highly object to that line not being upheld in this circumstance, and we would ask that you very carefully consider a circumstance of relieving the developer from having to comply with this. My wife and I were particularly alarmed when the developer told us, a group of us meeting out there, that if we didn't agree with his project, he would rip down every tree on that property, and that was most alarming to us."

In *Mangum*, a group of neighboring landowners alleged in response to a property owner's request for writ of *certiorari* "that they either owned property immediately adjacent to or in close proximity to the subject property." *Mangum*, 362 N.C. at 644, 669 S.E.2d at 283. The *Mangum* Court reasoned that "[w]hile this assertion, in and of itself, is insufficient to grant standing, it does bear some weight on the issue of whether the complaining party has suffered or will suffer special damages distinct from those damages to the public at large." *Id.* Moreover, the neighboring landowners "testified during the Board hearing . . . [as to the] adverse effects on their property[.]" *Id.* The Supreme Court held that "the allegations and evidence presented by petitioners in regards to the 'increased traffic, increased water runoff, parking, and safety concerns,' as well as the secondary adverse effects on petitioners' businesses, were sufficient special damages to give standing to petitioners[.]" *Id.*

We are unable to distinguish the special damages found sufficient to support intervention by the Supreme Court in *Mangum* and the special damages alleged by Intervenors here. In fact, Intervenors' allegation that development of the Property without the "performance controls" required of property associated with a Conservation Overlay District will "significantly increase[] traffic, light pollution, noise and other related pollution that will all lead to a pecuniary loss in the value of the Intervenor-Respondents' properties" is remarkably similar to the special damage allegations deemed sufficient in *Mangum*. As a result, we conclude that the trial court did not err by allowing Intervenors' motion to intervene pursuant to N.C. Gen. Stat. § 160A-388(e2).

In addition, we also believe that the trial court did not err by concluding that Intervenors satisfied the standards for intervention pursuant to N.C. Gen. Stat. § 1A-1, Rule 24(a)(2). In addition to the factors discussed above, Intervenors rely on the decision of this Court in *Northwestern Bank v. Robertson*, 25 N.C. App. 424, 213 S.E.2d 363 (1975), to support their allegation that the City could not adequately represent Intervenors' interests before the trial court since their interest is "of such direct and immediate character that [Intervenors] will gain or lose by direct operation of the judgment[.]" *Northwestern Bank v. Robertson*, 25 N.C. App. 424, 426, 213 S.E.2d 363, 365 (1975) (quoting *Griffin & Vose, Inc. v. Minerals Corp.*, 225 N.C. 434, 35 S.E.2d 247 (1945)). This contention, in addition to Intervenors' claims that (1) Intervenors are the owners of property that is "contiguous" or near the Property, and that (2) the development of the Property in the absence of the "performance controls" that would be required in the event that the Property was found to be in or associated with a Conservation Overlay District will "significantly increase[] traffic, light pollution, noise and other related pollution that will all lead to a pecuniary loss in the value" of Intervenors' properties, satisfies the requirements of N.C. Gen. Stat. § 1A-1, Rule 24(a)(2). As a result, we conclude that the trial court did not err by granting Intervenors' motion to intervene pursuant to N.C. Gen. Stat. § 1A-1, Rule 24(a)(2). *See Councill*, 146 N.C. App. at 107, 551 S.E.2d at 910 (holding that a motion to intervene was improperly denied when intervenors alleged "that approval of Councill's application for a conditional use permit would: (1) result in an increase of traffic volume[;] . . . (2) cause significant risks to the health and safety of [the intervenors] and their families; and (3) cause a reduction in the fair market value of their property").

## B. Intervenors' Appeal

[2] In reviewing the decision of a board of adjustment, "the superior court sits as an appellate court, and not as a trier of facts." *Overton v. Camden County*, 155 N.C. App. 391, 393, 574 S.E.2d 157, 160 (2002) (quoting *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (internal quotation omitted). The superior court's review of a board of adjustment's decision is limited to determining whether:

> 1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.

*Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441, *disc. review denied*, 356 N.C. 611, 574 S.E.2d 676 (2002) (quoting *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 146 N.C. App. 388, 390, 552 S.E.2d 265, 267 (2001), *rev'd per curiam on other grounds*, 355 N.C. 269, 559 S.E.2d 547 (2002)). "If the superior court is reviewing either the sufficiency of the evidence or whether the board's decision was arbitrary and capricious, the superior court applies the 'whole record test.' " *Overton*, 155 N.C. App. at 393, 574 S.E.2d at 159-60 (quoting *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 140 N.C. App. 99, 102, 535 S.E.2d 415, 417 (2000), *aff'd*, 354 N.C. 298, 554 S.E.2d 634 (2001)). The findings of the board of adjustment "are binding if supported by substantial competent evidence presented at the hearing[,]" *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997), *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997) (citing *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 135-36, 431 S.E.2d 183, 186 (1993)), and "[t]he reviewing court may not substitute its own judgment for that of the body when the record contains competent and substantial evidence supporting the findings[,] . . . even though conflicting evidence in the record would have allowed the court to reach a contrary finding if proceeding *de novo*." *Tate Terrace*, 127 N.C. App. at 218, 488 S.E.2d at 849 (citing *CG&T Corp. v. Bd. of Adjust. of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992)). If the board's decision is challenged as resting on an error of law, *de novo* review is proper. *See Westminster Homes*, 140 N.C. App. at 102, 535 S.E.2d at 417; *see also*

*Capital Outdoor*, 152 N.C. App. 474, 567 S.E.2d 440. "An appellate court's review of the trial court's zoning board determination is limited to determining whether the superior court applied the correct standard of review, and to determin[ing] whether the superior court correctly applied that standard." *Overton*, 155 N.C. App. at 393-94, 574 S.E.2d at 160 (citing *Westminster Homes*, 140 N.C. App. at 102-03, 535 S.E.2d at 417).

## 1. Timeliness

[3] Intervenors initially contend that the trial court erred by ruling that Petitioner's appeal to the Board of Adjustment was not time-barred pursuant to City Code Section 18-27. We disagree.

Section 18-28 provides, in pertinent part, as follows:

Appeals to the board concerning interpretation or administration of this chapter by the City Manager may be taken by any person aggrieved or by any officer, department, commission or board of the city. Such appeal may be taken by filing a notice of appeal specifying the grounds thereof with the secretary to the board within ten (10) consecutive calendar days after the issuance of the City Manager's order. Upon proper filing of an appeal, the City Manager shall forthwith transmit to the board all papers then constituting the record upon which the action appealed from was taken as provided in the rules of procedure. The board shall fix a reasonable time for the hearing of appeal, give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time. At the hearing, any party may appear in person or by agent or attorney.

As we have already noted, the applicable standard of review requires that we first determine whether the trial court utilized the appropriate standard of review in evaluating Intervenors' contention. *Overton*, 155 N.C. App. at 393-94, 574 S.E.2d at 160. In order to properly resolve this issue on the merits, we must determine the meaning of "issuance" and "order." Properly defining "issuance" and "order" involves a question of law. However, identifying the actual dates upon which the City Manager made his determination or upon which Petitioner filed its notice of appeal involves a question of fact. Thus, the extent to which Petitioner lodged a timely appeal to the Board of Adjustment presents a mixed question of law and fact.

We next must determine whether the superior court correctly applied the appropriate standard of review. In this case, the record

tends to show that Petitioner received a letter, which was transmitted in the form of an e-mail attachment, from Planner Prete on 7 August 2007 stating, "[a]s requested in our meeting on August 6, 2007, I am providing the following agency determination of the regulation of Conservation Resources on the Sidbury site. . . . [T]he wetland area delineated on the site in question is subject to the City COD controls." On the following day, Petitioner filed an "APPEAL FROM DETERMINATION OF THE CODE ENFORCEMENT OFFICER." The record does not reflect that any party objected to the timeliness of Petitioner's appeal from the TRC's determination to the Board of Adjustment pursuant to Section 18-28 of the City Code. Although Intervenors contended before the trial court and contend on appeal that Planner Prete's 7 August 2007 letter was preceded by several other letters to the same effect, that one or more of these earlier letters should have precipitated an appeal to the Board of Adjustment, and that Petitioner's failure to appeal within ten days after one of these earlier letters rendered its appeal untimely, this argument does not seem to have been advanced before the Board of Adjustment by any party, including the City staff from whose determination the appeal was taken. On the contrary, the findings of fact made by the Board of Adjustment tend to show that Petitioner's appeal was, in fact, timely.

> [O]ne of the functions of a Board of Adjustment is to interpret local zoning ordinances, and . . . [such interpretation] is given deference. Therefore, our task on appeal is not to decide whether another interpretation of the ordinance might reasonably have been reached by the board, but to decide if the board acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law in interpreting the ordinance.

*Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 140 N.C. App. 99, 103, 535 S.E.2d 415, 417-18 (2000). The superior court's scope of review on *certiorari* is limited to errors alleged to have occurred before the local board. *See Godfrey v. Zoning Bd. of Adjust.*, 317 N.C. 51, 62-63, 344 S.E.2d 272, 279 (1986) (holding that, because the board of aldermen only decided whether to grant a variance under the zoning ordinance, the superior court erred by determining the question of the constitutionality of the zoning ordinance, which was never raised or considered by the board of aldermen). "[T]he superior court, and hence this Court through our derivative appellate jurisdiction, [only has] the statutory power to review" those issues presented to the board of adjustment. *Godfrey*, 317 N.C. at 63,

344 S.E.2d at 279. As a result, because the Board of Adjustment did not make any legal conclusions regarding whether an "agency determination" communicated by a "Senior Planner" constituted an "order" by the "City Manager," in compliance with Section 18-28 of the Wilmington City Code, and because the Board of Adjustment made no findings of fact with regard to the dates upon which an "order" as envisioned by Section 18-28 of the City Code was filed and appealed therefrom, it was impossible for the trial court to determine whether, after applying the "whole record test," there was sufficient evidence of record to support the Board of Adjustments's findings, "[whether] the board's decision was arbitrary and capricious," *Overton*, 155 N.C. App. at 393, 574 S.E.2d at 159-60, or whether the Board of Adjustment's decision rested upon an error of law. *See Westminster Homes*, 140 N.C. App. at 102, 535 S.E.2d at 417. As a result, we conclude that the trial court did not err by denying Intervenors' motion to dismiss Petitioner's appeal to the Board of Adjustment as untimely.

## 2. N.C. Gen. Stat. § 1A-1, Rule 60

[4] Secondly, Intervenors contend that the trial court erred by denying their motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60. We disagree.

As we have already noted, the first question we must address in reviewing an appeal stemming from a proceeding before a board of adjustment is whether the trial court utilized the appropriate standard of review. *See Overton*, 155 N.C. App. at 393, 574 S.E.2d at 159-60; *Westminster Homes*, 140 N.C. App. at 102, 535 S.E.2d at 417. In view of the fact that the specific issue that Intervenors raised before the trial court in seeking relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 60, involved a purely legal question, we believe that the trial court was required to exercise a *de novo* standard of review.

Intervenors claim that, subsequent to the entry of the Board of Adjustment's order, they discovered new evidence "that would justify [the trial court] remanding Petitioner's appeal to the [Board of Adjustment] for a new hearing and determination." In essence, Intervenors claim to have discovered evidence tending to show that Petitioner had previously submitted another application for the development of the property in question to the TRC in 2001; that the same individual signed the 2001 application and the present application; that Petitioner's 2001 application indicated, contrary to Petitioner's assertions in this proceeding, that the Conservation

Overlay District restrictions applied to the Property; and that the applicability of the Conservation Overlay District restrictions to the Property was discussed among members of the City staff prior to and on the date of a TRC meeting at which Petitioner's materials were reviewed. According to Intervenors, the 2001 site development application was named "Bridgeview Offices and Condominiums" rather than "The Sidbury."

N.C. Gen. Stat. § 1A-1, Rule 60, provides, in pertinent part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding [if there exists] . . . [n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]

N.C. Gen. Stat. § 1A-1, Rule 60(b)(2). As we have already noted, however, the trial court had jurisdiction over this proceeding on the basis of a petition for writ of *certiorari* seeking review of an order of the Board of Adjustment. "In reviewing the errors raised [by petitioner's] petition for writ of *certiorari*, the superior court was sitting as a court of appellate review[.]" *Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 662 (1990). The Supreme Court has reasoned that, since the superior court is acting in such proceedings as an appellate court rather than a trial court, motions brought pursuant to the North Carolina Rules of Civil Procedure, such as motions for summary judgment, cannot be properly granted since they are "properly heard in the trial courts." *Batch*, 326 N.C. at 11, 387 S.E.2d at 662 (citing *Britt v. Allen*, 12 N.C. App. 399, 183 S.E.2d 303 (1971)). Instead, "[r]eview pursuant to writ of *certiorari* of an administrative decision is based solely upon the record as certified." *Id.*; *See also Godfrey*, 317 N.C. at 63, 344 S.E.2d at 279 (holding that an issue not raised before a board of aldermen could not be considered on *certiorari*). Since Intervenors did not seek relief from the Board of Adjustment based upon the information upon which they have predicated their motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60, and since, for that reason, the Board of Adjustment never addressed the extent to which the information in question justified granting any sort of relief, the record does not contain any ruling by the Board of Adjustment which the trial court could have reviewed in accordance with the applicable standard of review. As a result, we conclude that the trial court did not err by denying Intervenors' motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60.

### C. Judicial Estoppel

**[5]** Finally, Intervenors contend that the trial court erred by failing to hold that Petitioner was judicially estopped from denying that it was subject to the Conservation Overlay District restrictions by virtue of the fact that, at the time that it submitted its application for approval of the Bridgeview project in 2001, it admitted that the Property was subject to those restrictions. We disagree.

"Broadly speaking, 'estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth.' " *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 13, 591 S.E.2d 870, 879 (2004) (quoting 28 Am. Jur. 2d, *Estoppel and Waiver* § 1 (2000)). "[J]udicial estoppel seeks to protect courts, not litigants, from individuals who would play 'fast and loose' with the judicial system," *Whitacre P'ship*, 358 N.C. at 26, 591 S.E.2d at 887, by "prohibiting parties from deliberately changing positions [on factual assertions] according to the exigencies of the moment." *Id.*, 358 N.C. at 28, 591 S.E.2d at 888 (citations and internal quotation marks omitted). The Supreme Court described the following three factors as useful in determining whether the doctrine of judicial estoppel should be invoked, with only the first being essential for the doctrine's invocation:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.*, 358 N.C. at 29, 591 S.E.2d at 889 (internal quotation marks and citations omitted); *see also Harvey v. McLaughlin*, 172 N.C. App. 582, 584, 616 S.E.2d 660, 662-63 (2005). Judicial estoppel is an "equitable doctrine invoked by a court at its discretion." *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 188, 594 S.E.2d 809, 812 (2004) (quotation omitted). Ordinarily, "[t]he invocation of the doctrine of judicial estoppel is addressed to the sound discretion of the trial court, and our review of a trial court's application of the doctrine is limited to determining

whether the trial court abused its discretion." *McLaughlin*, 172 N.C. App. 582, 584, 616 S.E.2d 660, 663 (2005) (citation omitted). However, as we have repeatedly stated, the superior court's scope of review in proceedings, such as this one, which originate from boards of adjustment is limited to determining whether:

> 1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.

*Capital Outdoor*, 152 N.C. App. at 475, 567 S.E.2d at 441. In other words, the superior court's scope of review on *certiorari* is limited to errors alleged to have occurred before the local board, *Godfrey*, 317 N.C. at 63, 344 S.E.2d at 279, with our review from the superior court's decision further limited to ascertaining "whether the superior court applied the correct standard of review, and . . . whether the superior court correctly applied that standard." *Overton*, 155 N.C. App. at 394, 574 S.E.2d at 160.

Intervenors argue that, having previously submitted an application to the TRC in September 2001 that depicted the Property as lying, at least in part, within the Conservation Overlay District, it is clear that Petitioner knew that the Property lay in a Conservation Overlay District in 2001 and that Petitioners should have been judicially estopped from arguing before the superior court in this case that the Property did not lie in a Conservation Overlay District. However, no evidence pertaining to the Bridgeview project was ever presented to the Board of Adjustment, so that the certified record did not contain any evidence pertaining to Bridgeview for the superior court to examine. The evidence upon which Intervenors rely materialized for the first time in the superior court, which is required to act in the capacity of an appellate court; such evidence was incompetent, since Petitioner had no chance to refute it before the Board of Adjustment, and its consideration would have exceeded the scope of the superior court's review, which is limited to errors alleged to have occurred before the local board. *See Godfrey*, 317 N.C. at 63, 344 S.E.2d at 279. Intervenor's failure to raise the issue of estoppel before the Board of Adjustment effectively precluded the trial court and precludes this Court from considering Intervenors' estoppel claim. Therefore, we conclude that the trial court did not err in failing to apply the doctrine of judicial estoppel.

## Conclusion

As a result, for the reasons stated above, we conclude that Intervenors' appeal is not moot and that the trial court did not err by granting Intervenors' motion to intervene. In addition, we further conclude that the trial court did not err by failing to conclude that Petitioner's appeal to the Board of Adjustment should have been dismissed as untimely; by denying Intervenors' motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60; and by declining to hold that Petitioner was judicially estopped from contending the Conservation Overlay District restrictions did not apply to the Property.[3] As a result, the trial court's order is affirmed.

AFFIRMED.

Judges McGEE and JACKSON concur.

─────────────────

3. Intervenors did not argue the issue of whether the trial court erred by reversing the Board of Adjustment's determination that the restrictions set out in former Section 18-215 did not apply to the Property. As a result, any such argument is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).