IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1096

Filed: 15 August 2017

Mecklenburg County, No. 15 CVS 9540

NCJS, LLC and JAMES H. PLYLER, Petitioners,

v.

CITY OF CHARLOTTE, *a municipal corporation*, Respondent.

Appeal by petitioners from order entered 5 April 2016 by Judge Hugh Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 May 2017.

> *The Odom Firm, PLLC, by David W. Murray; and James H. Plyler, pro se, for petitioner-appellants.*
>
> *Senior Assistant City Attorney Thomas E. Powers III and Senior Assistant City Attorney Terrie Hagler-Gray, for respondent-appellee.*

ELMORE, Judge.

This is a zoning case about screening dumpsters. Petitioners NCJS, LLC and James H. Plyer (collectively "NCJS") own industrially zoned property in Charlotte. On the property sits a warehouse constructed in 1970 that is divided into six leasable units. Currently abutting the warehouse are two leaseholder-owned dumpsters unscreened from public view. A 1984 amendment to the Charlotte Zoning Ordinance (CZO) required that dumpsters be screened on three sides by a fence. Section 12.303 of the CZO, which imposes the dumpster-screening requirement, provides that "the

provision of this Section must be met at the time that land is developed or land and structures are redeveloped."

After NCJS received a zoning notice of violation (NOV) for failing to screen its dumpsters, it appealed to the City of Charlotte's zoning board of adjustment ("City Board") (respondent), arguing that its property was neither developed nor redeveloped since enactment of the 1984 dumpster-screening amendment as required to trigger its application. After a hearing, the City Board voted three to two to affirm the zoning administrator's decision and issued a written order demanding that NCJS screen its dumpsters. In its decision, the City Board determined that NCJS's dumpsters were legally nonconforming structures under the CZO because they were unscreened and thus subject to the nonconformance provisions regulating nonconforming structures, which provides a nonconforming structure loses its nonconforming status when moved. Based on photographs of NCJS's property that showed the dumpsters had moved to different locations against the warehouse, the City Board concluded its dumpsters lost their legal nonconformity and need to be screened. NCJS petitioned the superior court for certiorari review, challenging the City Board's decision on several grounds. After a hearing, the superior court entered an order affirming the City Board's decision. NCJS appealed.

On appeal, NCJS alleges several errors arising from the superior court's order and the City Board's decision. The dispositive issue, however, is whether the City

Board misinterpreted and misapplied the CZO, such that its decision should be reversed. Because we hold the City Board misinterpreted the CZO by concluding that NCJS's dumpsters were "nonconforming structures" without determining whether Section 12.303's dumpster-screening requirement was triggered, and thus misapplied the CZO by subjecting NCJS's dumpsters to the regulations governing nonconforming structures, which provides for the termination of a legal nonconformity when a nonconforming structure is moved, we reverse the superior court's order affirming the City Board's decision. Additionally, because the local zoning authority failed to satisfy its burden of proving the existence of a current zoning violation, we remand this case to the superior court for further remand to the City Board with the instruction to rescind the NOV issued against NCJS. In light of our disposition, we decline to address NCJS's remaining arguments.

## *I. Background*

In 2006, NCJS purchased property located at 130 Stetson Drive in Charlotte, which is currently zoned as an I-1 industrial district. When NCJS's property was developed in 1970, it was subject to Mecklenburg County's zoning ordinance, which contained no dumpster-screening requirement. Sometime after 1970, the property came under the zoning jurisdiction of the City of Charlotte and subject to the CZO, which adopted screening requirements in 1972. In 1984, the City of Charlotte amended the CZO to specifically include dumpsters among the listed items requiring

screening. Section 12.303 imposes the challenged dumpster-screening requirement and provides: "The provisions of this Section must be met at the time that land is developed or land and structures are redeveloped."

On 4 February 2015, a zoning administrator sent NCJS a letter, the zoning NOV, stating that it was violating the CZO because its dumpsters were unscreened. NCJS appealed to the City Board, which heard the matter on 31 March 2015. At the hearing, the zoning administrator argued that when the CZO's screening provision was amended in 1984 to include dumpsters, all unscreened dumpsters became "nonconforming structures" under CZO § 2.201 and thus were subject to the nonconformance provisions of CZO § 7.103 (regulating nonconforming structures), which provides for the termination of a legal nonconformity when a nonconforming structure is moved. The zoning administrator showed photographs of NCJS's property that revealed the following: in 2007, two dumpsters abutted the warehouse; in 2010, one dumpster had been removed from the property; in 2011, the remaining dumpster had been moved from one side of a garage entrance to the other; and in 2014, another dumpster had been added against the warehouse. Thus, the zoning administrator argued, because NCJS's dumpsters were nonconforming structures and had been moved, they lost their legal nonconformity and must now be screened.

NCJS argued that its property was grandfathered in from CZO § 12.303's dumpster-screening requirement because its property was developed in 1970, and

neither its land nor its structures had been redeveloped. Thus, NCJS argued, because CZO § 12.303 contemplates dumpster-screening compliance when "land is developed or land and structures are redeveloped," neither of which occurred on its property since the 1984 amendment, Section 12.303's dumpster-screening requirement did not apply to its property.

After the hearing was closed, one member of the City Board moved to uphold the zoning NOV, but it was not seconded. After further deliberation among members of the City Board, the hearing was reopened. After the hearing was closed for the second time, the City Board voted three to two to affirm the determination that NCJS's dumpsters needed to be screened. Following the hearing, the City Board issued a written order affirming the zoning administrator's decision to issue NCJS a zoning NOV and demanding that NCJS screen its dumpsters. In its decision, the City Board agreed with the zoning administrator's interpretation that all dumpsters existing after enactment of the 1984 dumpster-screening amendment were nonconforming structures subject to the nonconformance provisions regulating nonconforming structures. Thus, the City Board found, NCJS's dumpsters lost their legal nonconformity when they were moved and must now be screened in compliance with the CZO.

On 18 May 2015, NCJS petitioned the Mecklenburg County Superior Court for certiorari review of the City Board's decision. After a 24 February 2016 hearing, the

superior court entered an order on 5 May 2016 affirming the City Board's decision. NCJS appeals from the superior court's order.

## *II. Analysis*

On appeal, NCJS contends the trial court erred by (1) failing to reference any of the grounds alleged in its petition for certiorari review, failing to identify which review standard it applied to any ground raised and the application of that review, failing to make any findings or conclusions related to whether the City Board's interpretation of the CZO was correct; and (2) finding facts beyond those found by the City Board to justify the City Board's decision. NCJS also asserts (3) the City Board misinterpreted the CZO by concluding its unscreened dumpsters were nonconforming structures because its dumpsters are "permitted accessory uses or structures" under the CZO and neither triggering event occurred that would subject its property to Section 12.303's dumpster-screening requirement. NCJS asserts further that (4) the City Board misapplied its ordinance by subjecting the dumpsters to the nonconformance provisions regulating "nonconforming structures," which prohibits movement, rather than "nonconforming accessory uses and structures," which does not. Finally, NCJS asserts (5) the City Board's decision was not based on sufficient evidence and was arbitrary and capricious. Because we conclude that NCJS's third alleged error is dispositive and warrants reversal of the City Board's decision, we decline to address its remaining arguments.

## A. Standard of Review

We review a superior court's certiorari review of a municipal zoning board's quasi-judicial decision to determine whether the superior court: (1) " 'exercised the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly.' " *CRLP Durham, LP v. Durham City/Cnty. Bd. of Adjustment*, 210 N.C. App. 203, 207, 706 S.E.2d 317, 320 (2011) (brackets omitted) (quoting *Union County Zoning Bd. of Adjustment*, 185 N.C. App. 582, 587, 649 S.E.2d 458, 464 (2007)).

On certiorari review, " 'the superior court sits as an appellate court, and not as a trier of facts,' " *Bailey & Assocs., Inc. v. Wilmington Bd. of Adjustment*, 202 N.C. App. 177, 189, 689 S.E.2d 576, 585 (2010) (quoting *Overton v. Camden Cnty.*, 155 N.C. App. 391, 393, 574 S.E.2d 157, 160 (2002)), and its scope of review is limited to the following:

> "(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious."

*Cary Creek Ltd. v. Town of Cary*, 207 N.C. App. 339, 341–42, 700 S.E.2d 80, 82–83 (2010) (quoting *Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006)).

Generally, the petitioner's asserted errors dictate the scope of judicial review. " 'If a petitioner contends the Board's decision was based on an error of law, '*de novo*' review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the 'whole record' test.' " *Four Seasons Mgmt. Servs. Inc. v. Town of Wrightsville Beach*, 205 N.C. App. 65, 75, 695 S.E.2d 456, 462 (2010) (quoting *Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 527–28, *disc. rev. denied*, 353 N.C. 280, 546 S.E.2d 397 (2000)).

In its petition for certiorari review to the superior court, NCJS contended the City Board's decision:

> (1) was in violation of the Petitioners' due process rights, (2) was in excess of the statutory authority conferred upon the City or the authority conferred upon the [City Board] by the City Ordinance, (3) was inconsistent with applicable procedures specified by statute or City Ordinance, (4) was erroneous as a matter of law, (5) was unsupported by substantial competent evidence in view of the entire record, and (6) was arbitrary and capricious.

" '[A] court may properly employ both standards of review in a specific case.' " *Thompson v. Town of White Lake*, ___ N.C. App. ___, ___, 797 S.E.2d 346, 351 (2017) (quoting *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002)). " 'However, the standards are to be applied separately to discrete issues, and the reviewing superior court must identify which standard(s) it applied to which issues[.]' " *Id.* (quoting *Mann Media*, 356 N.C. at 15, 565 S.E.2d at 18). To

secure meaningful appellate review, " 'the trial court . . . must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.' " *Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17 (brackets omitted) (quoting *Sun Suites Holdings*, 139 N.C. App. at 272, 533 S.E.2d at 528).

Here, the superior court's order provides that it "conducted a *de novo* review concerning questions of law and a 'whole record' test concerning the adequacy of the evidence,' " without identifying which review standard it applied to which issue, and, rather than actually addressing in its order any issue raised in NCJS's petition, the superior court made an additional finding beyond that found by the City Board to support the City Board's decision, and then "concluded as a matter of Law that the Decision Letter was proper and correct and should be affirmed."

Although the superior court's order here was inadequate, "[r]emand is not automatic when 'an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s).' " *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 158, 712 S.E.2d 868, 872 (2011) (quoting *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 664, 599 S.E.2d 888, 898 (2004)). "Under such circumstances the appellate court can 'determine how the trial court *should have* decided the case upon application of the appropriate standards of review.' " *Id.* at 158–59, 712 S.E.2d at 872 (brackets omitted) (quoting *Carroll*, 358 N.C. at 665, 599 S.E.2d at 898). Because the appellate

record permits us to meaningfully review the dispositive issue in this appeal—whether the City Board's interpretation and application of the CZO warrants reversal of its ultimate decision—we elect not to remand this case to the superior court to identify and apply the proper review standard to each issue raised in NCJS's petition. *See Morris Commc'ns*, 365 N.C. at 159, 712 S.E.2d at 872–73 (electing not to remand where Court could " 'reasonably determine from the record' whether [the landowner's] challenge to the [Board of Adjustment's] interpretation 'warrant[s] reversal or modification' of the [Board of Adjustment's] ultimate decision").

## B. Dumpster-Screening Trigger

NCJS contends the City Board misinterpreted the CZO by concluding its unscreened dumpsters were "nonconforming structures" because its dumpsters were legally conforming absent a determination that Section 12.303's dumpster-screening requirement was triggered as to its property. We agree.

" 'Questions involving the interpretation of ordinances are questions of law,' and in reviewing the trial court's review of the Board of Adjustment's decision, this Court applies a *de novo* standard and may freely substitute its judgment for that of the trial court." *Fehrenbacher v. Cty. of Durham*, 239 N.C. App. 141, 150, 768 S.E.2d 186, 193 (2015) (quoting *Ayers v. Bd. of Adjustment for Town of Robersonville,* 113 N.C. App. 528, 530–31, 439 S.E.2d 199, 201, *disc. rev. denied,* 336 N.C. 71, 445 S.E.2d 28 (1994)). "Under de novo review a reviewing court considers the case anew and

may freely substitute its own interpretation of an ordinance for a board of adjustment's conclusions of law." *See Morris Commc'ns,* 365 N.C. at 156, 712 S.E.2d at 871 (citing *Mann Media,* 356 N.C. at 13, 565 S.E.2d at 17).

"The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Four Seasons Mgmt. Servs.*, 205 N.C. App. at 76–77, 695 S.E.2d at 463 (quoting *Cogdell v. Taylor*, 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965)).

> Statutory interpretation properly begins with an examination of the plain words of the statute. If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms. Thus, [w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning. Therefore, a statute clear on its face must be enforced as written.

*Lanvale Props., LLC v. Cnty. of Cabarrus*, 366 N.C. 142, 154, 731 S.E.2d 800, 809–10 (2012) (internal citations omitted) (internal quotation marks omitted).

To support its decision to uphold the zoning NOV issued against NCJS, the City Board made the following relevant findings and conclusions:

> 3. The site is zoned I-2 (general industrial).
>
> . . . .
>
> 5. The applicant is appealing the Zoning Administrator's interpretation that dumpsters located on the subject site must be screened on three sides from public view.

. . . .

8.    Per Section 9.1104(3) of the Zoning Ordinance, dumpsters are permitted accessory structures within industrial zoning districts.

9.    Per Section [12].403(1) of the Zoning Ordinance, dumpsters must be screened from the public view from public streets.

10. The Zoning Ordinance in effect at the time the subject property was developed in 1970 . . . . did not specifically indicate that dumpsters must be screened from the public view from public streets.

11. A dumpster that lawfully existed on the effective date of when dumpsters were required to be screened from public view by the Zoning Ordinance (i.e. early 1980's) and does not comply with these regulations, are considered to be a nonconforming structure as defined by Section 2.201 of the Zoning Ordinance.

12.    Per Section 7.103(6) of the Zoning Ordinance, a nonconforming structure shall not be moved unless it thereafter conforms to the standards of the zoning district in which it is located.

13. Based on aerials, the location of dumpsters have moved and the number of dumpsters have changed on the subject site following the effective date of when dumpsters were required to be screened from public view by the Zoning Ordinance (i.e. early 1980's). Therefore, any dumpster on the subject site must conform to the current screening standards of the Zoning Ordinance.

14. Dumpsters, as nonconforming structures, lost their legal non-conformity when the dumpsters were moved and then moved again on the property.

NCJS specifically contends the City Board misinterpreted and misapplied the CZO by concluding (1) its "dumpsters were legally nonconforming" under Section 2.201, which (2) "lost their legal non-conformity by being moved" under Section 7.103(6).

The CZO defines a "nonconforming structure" as "[a]ny structure lawfully existing on the effective date of these regulations . . . which does not comply with these regulations or any amendment thereto." CZO § 2.201. Section 9.1104 provides that "dumpsters" are permitted "accessory uses or structures" on industrially zoned property "subject to the regulations of Section 12.403." CZO § 9.1104. Section 12.403 provides that dumpsters "shall be screened on three sides by a fence . . . in accordance with Section 12.303." CZO § 12.403. Section 12.303, which imposes the dumpster-screening requirement, provides that "[t]he provisions of this Section must be met at the time that land is developed or land and structures are redeveloped." CZO § 12.303.

The plain language of Section 12.303 indicates that its dumpster-screening requirement does not trigger unless "land is developed or land and structures are redeveloped." Thus NCJS's unscreened dumpsters could not fit Section 2.201's definition of a "nonconforming structure" unless Section 12.303's triggers have activated. Although the conditions precedent to trigger application of Section 12.303 are not ambiguous, this Court would interpret any doubts as to the applicability of a

zoning regulation in favor of the landowner. *See, e.g.*, *In re W.P. Rose Builders' Supply Co.,* 202 N.C. 496, 500, 163 S.E. 462, 464 (1932) ("Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner."). Accordingly, we hold that the proper interpretation of the CZO required the City Board to determine, as a condition precedent to concluding that NCJS's unscreened dumpsters were nonconforming, that NCJS's "land [was] developed or land and structures [were] redeveloped" after enactment of the 1984 dumpster-screening amendment.

A local governmental authority bears the burden of proving the existence of a current zoning violation. *See Shearl v. Town of Highlands*, 236 N.C. App. 113, 116–17, 762 S.E.2d 877, 881 (2014) ("[T]he burden of proving the existence of an operation in violation of the local zoning ordinance is on Respondent." (citing *Cty. of Winston-Salem v. Hoots Concrete Co.*, 47 N.C. App. 405, 414, 267 S.E.2d 569, 575 (1980)). Here, the zoning officer failed to assert that any activity on NCJS's property triggered application of Section 12.303's dumpster-screening requirement, and the City Board neither considered nor found whether a Section 12.303 trigger occurred that would bring NCJS's dumpsters out of compliance with the CZO. Rather, the City Board found that "the subject property was developed in 1970," made no findings addressing redevelopment, and implicitly concluded that all unscreened dumpsters were nonconforming structures that could lose their nonconformity when moved.

Because NCJS's dumpsters were permitted accessory uses or structures in its district and did not fail to comply with the CZO until Section 12.303's dumpster-screening requirement was triggered, its dumpsters fell outside Section 2.201's definition of a "nonconforming structure," and thus should not have been subject to Section 7.104's nonconformance provisions regulating nonconforming structures. Accordingly, we hold the City Board and the superior court misinterpreted and misapplied the CZO by concluding NCJS's dumpsters were nonconforming and subject to the nonconformance provisions regulating nonconforming structures without determining whether NCJS's land activity triggered application of Section 12.303's dumpster-screening requirement.

"Because [the Board of Adjustment's] interpretation of its [zoning] ordinance constituted an error of law, we reverse." *See Morris Commc'ns*, 365 N.C. at 162, 712 S.E.2d at 874 (reversing board's decision ordering landowner to remove relocated sign because board misinterpreted the term "work" as applied to sign permit's requirement landowner commence work on relocating sign within a certain timeframe). Since the local zoning authority failed to prove the existence of a current zoning violation, we conclude the appropriate remedy is to remand this case to the superior court for further remand to the City Board with instructions to rescind the 4 February 2015 zoning NOV issued against NCJS. In light of our disposition, we decline to address NCJS's remaining arguments.

### III. Conclusion

The City Board and the superior court misinterpreted and misapplied the zoning ordinance by concluding that NCJS's unscreened dumpsters were "nonconforming structures" subject to the regulations governing nonconforming structures absent any determination of whether NCJS's property activity since 1984 triggered application of Section 12.303's dumpster-screening requirement. Accordingly, we reverse the superior court's order. Because the local zoning authority failed to prove the existence of a zoning violation, we remand this case to the superior court for further remand to the City Board to rescind the 4 February 2015 zoning NOV issued against NCJS.

REVERSED AND REMANDED.

Judges INMAN and BERGER concur.