ARROWOOD, Judge.
Tucker Chase, LLC ("Tucker Chase" or "petitioner") appeals from an order affirming the Midland Board of Adjustment's decision. For the reasons stated herein, we affirm.
I. Background
The Town of Midland ("Midland")'s Planning and Zoning Board voted to approve petitioner's project, the Tucker Chase subdivision, on 1 June 2004. The subdivision was to be developed in accordance with six plats recorded by petitioner. The plats include road maintenance certifications providing that petitioner, or a successor in interest, will maintain the subdivision's roads according to "the standards set forth by the North Carolina Department of Transportation" ("DOT") until the respective government agency accepts the responsibility. Neither Midland nor the DOT ever accepted this obligation.
At some point after petitioner recorded the fifth plat in 2013, but before the sixth plat was recorded in 2016, Jupiter Land, LLC ("Jupiter Land") purchased the remaining undeveloped land in the Tucker Chase subdivision from petitioner. Pursuant to the sales agreement, petitioner retained a buy-back agreement from Jupiter Land, allowing petitioner to complete the construction of the residential portion of the subdivision that remained undeveloped.
In 2014, Midland began to receive complaints from the subdivision's residents that the subdivision's streets were in poor condition. Midland investigated, and agreed the streets "were in poor condition" and determined they "were not being maintained as required by the [Midland Development Ordinance]" (the "development ordinance"). Midland notified petitioner of its findings. Petitioner proposed a plan to repair the streets, but Midland's planning and zoning administrator rejected the plan as inadequate. Petitioner did not propose another plan, and made no repairs.
The residents of the subdivision continued to file complaints about the condition of the streets. In June 2016, a town engineer reported the streets remained in poor condition, including cracking in the curbs and pavement, sidewalk deterioration and shrinking, and potholes. Midland notified petitioner of this finding, and also that it had not maintained the required bonds or irrevocable letters of credit required for guaranties in lieu of construction. Although petitioner submitted another proposal for repairs on 2 September 2016, proposing to make repairs to streets as lots within the subdivision sold, Midland found this proposal unacceptable.
On 14 October 2016, the planning and zoning administrator issued a notice of violation ("NOV") to petitioner pursuant to Article 23, Section 23.5 of the development ordinance. The NOV notified petitioner that it was in violation of the road compliance certifications contained within the plats, and Article 16, Sections 16.1 and 16.2 of the development ordinance because of the inadequate condition of the subdivision's streets. The NOV requested petitioner contact the planning and zoning administrator with a plan to remedy the violations by 21 October 2016, and cautioned that, if corrective action had not begun by 21 November 2016 and completed within three months thereafter, Midland planned to pursue any or all available remedies to compel petitioner's compliance.
Petitioner appealed to the Board of Adjustment (the "Board"), arguing Midland should have accepted one of its previously proposed plans to repair the roads, and that it was improper for the town to apply its current development ordinance when the streets were platted before that ordinance was adopted. The Board held quasi-judicial hearings on the matter on 15 December 2016, 24 January 2017, and 28 February 2017, and affirmed the NOV pursuant to a decision entered on 25 April 2017.
Petitioner appealed the Board's decision to Cabarrus County Superior Court on 25 May 2017. The court issued a writ of certiorari that same day. On 13 November 2017, Jupiter Land filed a motion to intervene in the appeal. Petitioner moved to supplement the record with a 2004 consent agreement between petitioner and Cabarrus County on 4 December 2017. The matter came on for hearing before the Honorable Joseph N. Crosswhite on 11 December 2017 in Cabarrus County Superior Court.
On 19 March 2018, the court entered orders granting Jupiter Land's motion to intervene and petitioner's motion to supplement the record, and affirming the Board's decision.
Petitioner appeals.
II. Discussion
Petitioner argues the superior court erred because it failed: (1) to identify the standards of review applied to each issue raised in the petition for writ of certiorari ; (2) to determine the Board violated petitioner's substantive and procedural due process rights; (3) to determine Midland's requirements for performance guaranties exceeded statutory authority; and (4) to conclude the Board's decision was not supported by competent, material, and substantial evidence, and was arbitrary.
A. Standards of Review
First, petitioner argues the superior court's order is erroneous as a matter of law because it failed to properly identify the standards of review the court applied to each of the issues raised in its petition for writ of certiorari .
"On review of a superior court order regarding a board's decision, this Court examines the trial court's order for error[s] of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review." Turik v. Town of Surf City , 182 N.C. App. 427, 429, 642 S.E.2d 251, 253 (2007) (citation and internal quotation marks omitted) (alteration in original).
In accord with N.C. Gen. Stat. § 160A-393(k) (2017), a superior court reviewing a decision from a Board of Adjustment sits as an appellate court, not as a trier of facts, and should:
(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.
Turik , 182 N.C. App. at 430, 642 S.E.2d at 253 (citation and internal quotation marks omitted). A "petitioner's asserted errors dictate the scope of judicial review." NCJS, LLC v. City of Charlotte , --- N.C. App. ----, ----, 803 S.E.2d 684, 688 (2017).
When a petitioner alleges an error of law, the superior court conducts de novo review. Turik , 182 N.C. App. at 430, 642 S.E.2d at 253. "Under a de novo review, the superior court considers the matter anew and freely substitutes its own judgment for the agency's judgment." Id. (citation and internal quotation marks omitted). However, if a petitioner contends a board's decision was not supported by evidence or was arbitrary or capricious, the reviewing court applies the whole record test. Id. To conduct a whole record review, the "[c]ourt is to inspect all of the competent evidence which comprises the 'whole record' so as to determine whether there was indeed substantial evidence to support the Board's decision. Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." Id. (citations and internal quotation marks omitted).
[T]he standards are to be applied separately to discrete issues, and the reviewing superior court must identify which standard(s) it applied to which issues. To secure meaningful appellate review, the trial court ... must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.
NCJS, LLC , --- N.C. App. at ----, 803 S.E.2d at 689 (alteration, citations and internal quotation marks omitted).
Here, petitioner's petition raised the following issues:
3. In view of the entire record, the Board's decision to affirm the administrative decision was unsupported by the competent, substantial evidence and was arbitrary and capricious .
4. The Board did not follow proper procedure and the Board's decision was affected by error of law ....
4. [sic ] The Board acted in excess of statutory authority and in violation of substantive and procedural due process ....[1]
5. The following conclusions of law are not supported by adequate findings of fact:
i. Conclusions nos. 5 and 6 for the reason that the findings do not support them and the Town required a bond that contained an automatic renewal provision and such a requirement violates statutory law ;
ii. Conclusion no. 3 for the reason that the streets were certified and accepted as being constructed to NCDOT standards;
iii. Conclusions nos. 2, 3, 4, 5, 6, and 7[.]
(Emphasis added). The first paragraph (4) included three sub-issues, all relating to findings of fact. The second paragraph (4) also included sub-issues, each relating to whether the Board applied the ordinance in excess of statutory authority and violated petitioner's substantive and procedural due process rights.
In identifying the standard of review applied to each of these issues, the superior court's order provides:
1. Because this Court has jurisdiction by Writ of Certiorari, it sits as an appellate court to review the Board's quasi-judicial Decision. This Court reviewed the Board's decision de novo for procedural violations, due process violations, and other errors of law. This Court used "whole record" review to determine whether the Boards Decision was supported by competent material and substantial evidence and whether the Board's Decision was arbitrary or capricious.
2. Applying the de novo standard of review , the rights of Petitioner have not been prejudiced because the findings, inferences, conclusions and decisions contained within the Board's Decision are not: (a) in violation of any constitutional provisions , including those protecting substantive and procedural due process rights , (b) in excess of statutory authority conferred upon the Board and the Town by ordinance, (c) inconsistent with the applicable procedures specified in the Midland Development Ordinance and statutes, or (d) affected by any other error of law .
3. Applying the whole record standard of review , the rights of Petitioner have not been prejudiced because the findings, inferences, conclusions, and decisions contained within the Board's Decision are supported by competent, material, and substantial evidence in the whole record. Thus, the Board's Decision: (i) affirming the October 14, 2016 NOV issued to Petitioner by the Town, and (ii) determining that Petitioner failed to comply with the requirements of the Midland Development Ordinance by inadequately constructing and maintaining the streets within the Tucker Chase Subdivision and by not maintaining the required performance guarantees was not arbitrary or capricious .
(Emphasis added). Petitioner only discusses paragraph (1) of the order in its brief, and maintains that this paragraph alone is insufficient to secure meaningful appellate review. Thus, petitioner fails to consider paragraphs (2) and (3), and how these portions of the order address the issues as raised in the petition for writ of certiorari . Although each sub-issue is not specifically listed in the order's discussion of the standards of review applied by the superior court, the court correctly identified which standard of review applied to each of the six statutory issues as addressed by the petition to allow for meaningful appellate review. Accordingly, we hold petitioner's first argument is without merit.
B. Substantive and Procedural Due Process Rights
Next, we consider petitioner's argument that the superior court's order is erroneous as a matter of law and should be reversed because it did not find that the Board's decision violated petitioner's substantive and procedural due process rights by: (1) entering its decision without Jupiter Land as a party; (2) applying the current development ordinance instead of the 2001 version; (3) finding the NOV gave adequate notice of the violations; (4) denying petitioner the opportunity to present evidence related to the consent agreement; (5) failing to determine contested matters; (6) the Chairman of the Board failing to summarize the evidence presented at the hearings; (7) rendering its decision more than thirty days after the time the public hearing closed; and (8) failing to include a summary of the evidence introduced by petitioner in the decision.
1. Jupiter Land
First, we consider petitioner's argument that Jupiter Land's absence as a party during the hearings before the Board violated petitioner's due process rights. However, the record contains no indication petitioner raised this argument before the Board or the superior court.
In reviewing the decision of a Board of Adjustment, a superior court sits in the "posture of an appellate court" and "may not consider a matter not addressed by the Board[.]" Tate Terrace Realty Inv'rs, Inc. v. Currituck Cty. , 127 N.C. App. 212, 224, 488 S.E.2d 845, 852 (1997) (citations and internal quotation marks omitted). Similarly, our court "through our derivative appellate jurisdiction" may not "consider matters not raised below." Id. (citations omitted). Therefore, we decline to consider this argument because it is outside the scope of our review. Plaintiff's argument is dismissed.
2. Application of the Current Ordinance
Next, petitioner contends the Board violated its due process rights by ignoring its vested right to develop the subdivision in accordance with the 2001 version of the development ordinance.
Our Court previously determined, in an unpublished decision, that the application of an ordinance to a development built before the effective date of the ordinance is not improper because there is "an ongoing obligation to maintain ... subdivision streets pursuant to the ordinance." In re Harrell v. Midland Bd. of Adjustment , --- N.C. App. ----, ----, 796 S.E.2d. 340, ----, 2016 WL 7984233, at *5 (2016) (unpublished). Petitioner argues the facts before this court are distinguishable from In re Harrell because the consent agreement entered into by petitioner and Cabarrus County provides that present and future developers of the Tucker Chase subdivision have "the vested right to have subdivision plats approved and to develop and construct the Project in accordance with the ... land use plans, laws and regulations in existence and effective on 6-01-04[.]" We disagree. This section of the consent agreement also provides that it is "[s]ubject to Section 2.2.2" of the consent agreement, which reserves legislative powers as follows:
Future Changes of Laws and Plans; Compelling Countervailing Public Interest. Nothing in this Agreement shall limit the future exercise of the police power of the County in enacting zoning, subdivision, development, growth management, platting, environmental, open space, transportation and other land use plans, policies, ordinances and regulations after the date of this Agreement. ...
(Emphasis added). Therefore, petitioner was subject to ordinances the town enacted after 2004, and, just as in In re Harrell , petitioner had an ongoing obligation to maintain the subdivision's streets pursuant to current ordinances prior to assumption of maintenance by the town or DOT.
Accordingly, we hold petitioner's argument that the 2001 ordinance controlled the development and maintenance of the subdivision's streets to be without merit. We also note that, regardless of petitioner's ongoing obligation to maintain the streets pursuant to the ordinance, the petitioner also had an "ongoing obligation" to properly construct and maintain the streets through the plats recording the subdivision, which contain road maintenance certifications providing that petitioner, or a successor in interest, will maintain the subdivision's roads according to "the standards set forth by the [DOT]" until a government agency accepts the responsibility.
3. Notice
Petitioner argues the Board erred by failing to determine Midland did not provide adequate notice of violations, violating petitioner's right to procedural due process and causing the Board to enter a decision in excess of its authority. We disagree.
The ordinance requires that a NOV include: (1) the land, building, sign, structure, or use in violation; (2) the nature of violation and sections of ordinance violated; (3) the measures necessary to remedy the violation; and (4) an opportunity to cure the violation within a prescribed period of time. Midland Development Ordinance § 23.5-1. Midland's NOV to petitioner met these requirements, notifying petitioner: (1) the Tucker Chase subdivision's streets were in violation; (2) the streets were not properly constructed or maintained in accord with Midland or the DOT's standards, specifying the streets were in violation of Article 16, Sections 16.1, 16.2, and subsections 16.2-6 and 16-2.7 of the ordinance; (3) corrective measures would include meeting with Midland to form a plan to repair the streets, and the execution of that plan; (4) petitioner was given until 21 November 2016 to take action, and three months from that date to complete the project. This information provided petitioner with adequate notice of the violations. We are unconvinced by petitioner's unsupported claim that the development ordinance requires greater specificity.
We note petitioner's specific contention that the NOV failed to give notice that performance bonds would be at issue before the Board. We disagree this issue was not within the scope of matters before the Board. Performance guaranties are addressed under Section 16.1 of the town's ordinance, which the NOV identified as a section of the ordinance at issue. Additionally, the town notified petitioner by letter in September 2016 that it had not maintained the required bonds or irrevocable letters of credit required for guaranties in lieu of construction. The town referenced this letter in the NOV, and also included this letter on its exhibit list, which was shared with petitioner prior to the hearing before the Board. Therefore, petitioner had sufficient notice that performance bonds were within the scope of matters before the Board.
4. Additional Procedural Due Process Arguments
Petitioner argues the Board failed to follow its own rules of procedure, thereby violating petitioner's due process rights, in five additional ways: (1) denying petitioner the opportunity to present evidence relating to the consent agreement; (2) failing to decide contested matters; (3) failing to require the Board's Chairman to summarize the evidence; (4) failing to render its decision within thirty days; and (5) failing to summarize the evidence introduced by petitioner in the decision.
The first two arguments involve the consent agreement. First, petitioner argues it was deprived of due process when it did not have the opportunity to present evidence relating to the agreement, and again when the Board failed to decide contested matters, specifically, "the applicable law, the vested rights provision of the Consent Agreement, the construction and maintenance standards to which the Subdivision is subject, and other similar matters. ..."
Even assuming arguendo it was error to exclude the consent agreement and to decide its impact on the applicable law, for the reasons discussed supra , the admission of the agreement would not have changed the outcome of the case, or the applicable law. Therefore, petitioner was not prejudiced by the exclusion of this evidence, and this allegation of error cannot constitute reversible error. See Forsyth Cty. v. Shelton , 74 N.C. App. 674, 678, 329 S.E.2d 730, 734 (1985) ("The exclusion of evidence constitutes reversible error only if the appellant shows that a different result would have likely ensued had the error not occurred.") (citation omitted).
The remaining arguments similarly involve non-prejudicial procedural issues. First, petitioner argues that, although the Chairman of the Board permitted both parties to summarize the evidence, the Board erred when the Board's Chairman failed to summarize the evidence at the close of the hearing. Despite this allegation, petitioner fails to demonstrate how this alleged error, to which petitioner did not object, constitutes prejudicial error. Petitioner also fails to show how its next allegation of error, that the Board did not render its written decision within thirty days from the close of the hearing, prejudiced it, as the Board announced its decision, and the underlying reasoning, immediately following the hearing. Nor does petitioner show how it was prejudiced by the purported failure of the Board to summarize certain evidence introduced by petitioner in the decision.
Therefore, even assuming arguendo that each alleged procedural deficiency constitutes error, petitioner has failed to show prejudice. Accordingly, we decline to hold these errors constitute reversible error. See Richardson v. Union Cty. Bd. of Adjustment , 136 N.C. App. 134, 142, 523 S.E.2d 432, 438 (1999) ("[E]ven where the trial court has committed error, if that error is not prejudicial, then it is harmless.") (citation omitted); Forsyth Cty. , 74 N.C. App. at 678, 329 S.E.2d at 734.
C. Performance Guaranties
Petitioner argues the superior court erred by failing to determine Midland's requirements for performance guaranties exceeded its statutory authority and are preempted by N.C. Gen. Stat. § 160A-372 (2017) in three ways.
First, petitioner argues Midland demanded a bond in excess of the amount it was permitted to require by both statute and the development ordinance.
N.C. Gen. Stat. § 160A-372 and Section 16.1-9(B) of Midland's development ordinance both provide the amount of a "performance guarantee shall not exceed one hundred twenty-five percent (125%) of the reasonably estimated cost of completion at the time the performance guarantee is issued." N.C. Gen. Stat. § 160 A-372(g)(3). Petitioner contends Midland violated these provisions because the town's 8 September 2016 letter demanding petitioner provide the requisite performance guaranties stated petitioner would be required to provide a guarantee in an amount "between 125% and 150% of the estimated amount."
We disagree. Although the town could not require a guarantee greater than one hundred twenty-five percent (125%) of the estimated amount, the letter's error did not relieve petitioner of its burden to maintain performance guaranties. Furthermore, the town is permitted to require a guarantee up to one hundred twenty-five percent (125%) of the reasonably estimated cost of completion, which the town was willing to accept from petitioner as sufficient to meet this burden. Thus, petitioner's argument is without merit.
Second, petitioner contends Midland was not permitted to apply performance guarantees to the repair or maintenance of the streets. We disagree. Pursuant to N.C. Gen. Stat. § 160A-372(g)(4), "[t]he performance guarantee shall only be used for completion of the required improvements and not for repairs or maintenance after completion ." (Emphasis added). Thus, it was appropriate for petitioner to require a performance guarantee because the streets in the subdivision had not been maintained or completed in accordance with the DOT's standards and the development ordinance.
Third, petitioner argues Midland's refusal to accept the developer's election of guarantee violates N.C. Gen. Stat. § 160A-372(c), which provides:
(c) The ordinance may provide for the more orderly development of subdivisions by requiring the construction of community service facilities in accordance with municipal plans, policies, and standards. To assure compliance with these and other ordinance requirements, the ordinance may provide for performance guarantees to assure successful completion of required improvements at the time the plat is recorded as provided in subsection (b) of this section. For any specific development, the type of performance guarantee shall be at the election of the developer.
N.C. Gen. Stat. § 160A-372(c). Under N.C. Gen. Stat. § 160A-372,
[t]he term "performance guarantee" shall mean any of the following forms of guarantee:
a. Surety bond issued by any company authorized to do business in this State.
b. Letter of credit issued by any financial institution licensed to do business in this State.
c. Other form of guarantee that provides equivalent security to a surety bond or letter of credit.
N.C. Gen. Stat. § 160A-372(g)(1). Petitioner contends it met this standard because it was willing to place the net proceeds from the sale of the remaining lots in the subdivision in escrow to fund the costs of completion of the required improvements. However, these funds did not exist, and petitioner's expression of a conditional willingness to place funds in escrow, should they come into being, is insufficient to provide the security required to constitute a performance guarantee under N.C. Gen. Stat. § 160A-372. Therefore, petitioner's argument is without merit.
D. Evidence in the Record
Finally, petitioner argues the superior court erred by concluding the Board decision was supported by competent material and substantial evidence in the record and was not arbitrary. We disagree.
"When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." Mann Media, Inc. v. Randolph Cty. Planning Bd., 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citation and internal quotation marks omitted). To apply the whole record test, the reviewing court inspects all competent evidence that "comprises the 'whole record' so as to determine whether there was indeed substantial evidence to support the Board's decision." Turik , 182 N.C. App. at 430, 642 S.E.2d at 253 (citation and internal quotation marks omitted). Substantial evidence exists if there is such evidence that "a reasonable mind would regard as adequately supporting a particular conclusion." Id. (citation and internal quotation marks omitted).
Petitioner contends the Board's decision is not supported by the evidence in the record because neither the Town Manual nor the DOT's standards were admitted into evidence, even though the Board found the subdivision's roads were required to comply with the DOT's standards and "applicable plans and manuals adopted by the Town of Midland," and that the roads failed to satisfy these requirements.
After a careful review of the whole record, we hold that the superior court did not err in holding the Board decision was supported by substantial evidence because the written manual and standards were not included in the record. There was other evidence in the record that the roads did not comply with these standards.
Town engineer, Richard McMillan, testified as an expert about the DOT's standards, the condition of the streets, and the failure of the streets to meet the DOT's standards and the Town's standards. Mr. McMillan authored a report detailing this failure on 29 November 2016, which is included in the record. The record also includes a memorandum authored by another town engineer, which concludes the subdivision's streets did not meet the DOT and Town standards. Therefore, we hold the Board's decision is supported by the evidence in the record.
We now turn to petitioner's contention that the Board's decision is arbitrary because the Board's findings of fact relating to performance bonds were: (1) not supported by substantial evidence; and (2) insufficient to support the Board's conclusion of law that petitioner failed to maintain the required performance guarantee in violation of Midland's ordinance. We disagree.
The Board made the following findings of fact related to performance bonds:
15. Section 16.1-9(B) of the Current Ordinance provides in part:
(B) Guarantee in Lieu of Construction of Improvements. In lieu of completion of construction of the required improvements and utilities prior to final plat approval, the property owner may provide a performance guarantee in accordance with North Carolina General Statute 160(A)-372.
The performance guarantee shall be in an amount equal to 125% of the estimated cost of the installation of the required improvements as determined by the Town. The performance guarantee shall secure the completion of construction of the improvements shown in the approved preliminary plat and as detailed within the improved construction plans. The performance guarantee shall remain in full force and effect until such time as the construction of improvements and installation of utilities are completed and accepted by the Town of Midland. Failure to maintain the required performance guarantees shall result in the revocation of the approval of the preliminary plat and permits issued as a result of the preliminary plat approval. ...
....
24. The Town responded by letter dated September 8, 2016, that Tucker Chase, LLC's proposed maintenance of the ... streets ... was not acceptable. ... The Town also notified Tucker Chase, LLC that it had not maintained the required bonds or irrevocable letters of credit required for guaranties in lieu of construction, which was a continuing obligation under the Current Ordinance. The letter requested that Tucker Chase, LLC provide the guaranties for completion of the required repairs to the streets immediately.
Both the development ordinance and the September 2016 letter are included in the record, and the Town Administrator testified that petitioner failed to maintain the required bond. Therefore, the above findings of fact, which are contested by petitioner, are supported by substantial record evidence. Based on these findings of fact, the Board concluded:
5. Tucker Chase, LLC's failure ... to maintain a required performance guarantee in lieu of construction of the streets, [was a] continuing violation[ ] of the Initial and Current Ordinances.
6. Tucker Chase has failed to comply with the requirements of Section 16.1-9(B) of the Town of Midland's Current Ordinance in that it has failed to maintain a required performance guarantee in lieu of construction of the streets shown on Maps 2-5 of the Tucker Chase Subdivision.
As the findings of fact were sufficient to establish that petitioner violated the ordinance's requirement that it maintain the required performance guarantee, the Board's findings support conclusions of law 5 and 6. Therefore, the Superior Court properly concluded the Board's decision was not arbitrary.
III. Conclusion
For the forgoing reasons, we affirm the superior court's order.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and TYSON concur.

The petition numbered two different allegations as paragraph (4).