An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-278

Filed 21 January 2026

Randolph County, No. 24CVS000243-750

LONG PROPERTIES, LLC, Petitioner,

v.

CITY OF TRINITY, Respondent.

Appeal by petitioner from order entered 1 July 2024 by Judge W. Taylor Browne in Randolph County Superior Court. Heard in the Court of Appeals 28 October 2025.

> *Equitas Law Partners LLP, by Thomas S. Babel and Corrie Faith Lee, for petitioner-appellant.*

> *Wyrick Robbins Yates & Ponton LLP, by Samuel A. Slater and T. Nelson Hughes, Jr., for respondent-appellee.*

ZACHARY, Judge.

Petitioner Long Properties, LLC, ("Long Properties") appeals from an order of the Randolph County Superior Court affirming the decision of the City of Trinity Board of Adjustment ("the Board"), which denied Long Properties' application for development permits to build seven duplexes on nine lots within the jurisdiction of the City of Trinity Zoning Ordinance ("the zoning ordinance"). After careful review,

we reverse the superior court's order affirming the decision of the Board and remand to the superior court for further remand to the Board to conduct additional proceedings consistent with this opinion.

## I.    Background

Long Properties owns several parcels of land in the City of Trinity, North Carolina. Around April 2023, Long Properties applied for development permits in an R-40 zoning district to build seven duplexes on nine nonconforming lots of record. The zoning administrator denied Long Properties' application for the permits and H. Chad Long, the managing member of Long Properties, requested a written decision. In the zoning administrator's written denial, dated 17 August 2023, he explained: "The current zoning of your properties is R-40 and does allow duplex apartments but there are further requirements that have been adopted." He cited Section 12-4 of the zoning ordinance, which provides that duplexes must be built on lots with a minimum area of 50,000 square feet.

On 28 July 2023, Long Properties appealed the zoning administrator's decision to the Board. In the appeal, Long Properties acknowledged that the lots "do not comply with the prescribed minimum lot size," but asserted that they were nonconforming lots of record entitled to exemption from area requirements under Sections 9-1 and 9-2 of the zoning ordinance.

The Board heard Long Properties' appeal on 10 October 2023; voted to affirm the zoning administrator's decision to deny the permits on 13 November 2023; and

adopted a written order ("the Written Order") explaining its decision on 8 January 2024. The Board found, *inter alia*, that "resolution of [the] case depends on the interpretation of the ordinance language in conjunction with the status of the non-conforming lots not meeting the definition of a legal building lot in the City and the issue [of] whether Sec[s]. 9-1 & 9-2 conflict[ed] with Sec. 5-3 of the [zoning] ordinance"; and that the "zoning ordinance does make a provision for non-conforming lots of record, but for duplexes the [zoning] ordinance requires additional requirements." The Board concluded that the zoning administrator "denied the permits for the duplexes since the non-conforming lots did not meet the definition of a legal building lot."

On 5 February 2024, Long Properties petitioned for writ of certiorari to the Randolph County Superior Court pursuant to N.C. Gen. Stat. §§ 160D-406(k) and 160D-1402. In the petition, Long Properties asserted: (1) that the "Board erred as a matter of law when it considered new issues presented by a party other than [Long Properties] at the Hearing"; (2) that the Board "erred as a matter of law by impliedly holding that ambiguity exists in the [zoning ordinance]"; (3) that assuming, *arguendo*, there was an ambiguity, "the Board erred in its resolution of such ambiguity"; and (4) that the Board erred "by concluding that the [l]ots did not meet the definition of a legal building lot in the City" as there was "not competent, material, [and] substantial evidence in the record" upon which the Board could base this conclusion.

Long Properties' appeal before the superior court came on for hearing on 1 July

2024. The court found that "[n]o competent evidence was presented at the hearing before the [Board] regarding the [nonconforming lot] exceptions described in Sections 9-2 and 5-3 of the [zoning ordinance]"—that is, there was no evidence as to whether the lots could meet the other requirements that a nonconforming lot of record must satisfy or for which it must receive a variance—and concluded that "[t]he decision reached by the [Board] should be affirmed."

Long Properties gave timely notice of appeal.

## II. Discussion

Long Properties raises three issues on appeal: (1) whether the superior court erred in finding that there was no competent evidence presented to the Board regarding the nonconforming lot exceptions described in Sections 5-3 and 9-2 of the zoning ordinance; (2) whether the superior court erred in failing to address all issues raised in the petition for writ of certiorari; and (3) whether the superior court erred in affirming the Board's decision to affirm the zoning administrator's Written Determination. We agree with Long Properties that the superior court erred in affirming the Board's decision; consequently, we remand this matter to the superior court for further remand to the Board.

## A. Standards of Review

"In reviewing the decision of a board of adjustment, the superior court sits as an appellate court, and not as a trier of facts." *Bailey & Assocs., Inc. v. Wilmington Bd. of Adjust.*, 202 N.C. App. 177, 189, 689 S.E.2d 576, 585 (2010) (cleaned up). On

certiorari review, the scope of the superior court's review is limited to five duties:

> (1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*NCJS, LLC v. City of Charlotte*, 255 N.C. App. 72, 76, 803 S.E.2d 684, 688 (2017) (citation omitted). "If the board's decision is challenged as resting on an error of law," the superior court conducts de novo review; where it "is reviewing either the sufficiency of the evidence or whether the board's decision was arbitrary and capricious, the superior court applies the whole record test." *Bailey*, 202 N.C. App. at 189, 689 S.E.2d at 586 (cleaned up).

"Questions involving interpretation of zoning ordinances are questions of law. Accordingly, the superior court is to apply a de novo standard of review to [b]oard decisions involving application and interpretation of zoning ordinances, and the court may freely substitute its judgment for that of the [b]oard." *Four Seasons Mgmt. Servs., Inc. v. Town of Wrightsville Beach*, 205 N.C. App. 65, 76, 695 S.E.2d 456, 463 (2010) (cleaned up).

"An appellate court's review of the [superior] court's zoning board determination is limited to determining whether the superior court applied the correct standard of review, and . . . whether the superior court correctly applied that

standard." *Bailey*, 202 N.C. App. at 190, 689 S.E.2d at 586 (citation omitted). "[T]his Court must apply a de novo standard of review in determining whether the superior court committed [an] error of law in interpreting and applying the municipal ordinance, and may also freely substitute its judgment for that of the superior court." *Four Seasons*, 205 N.C App. at 76, 695 S.E.2d at 463 (cleaned up).

**B. <u>Superior Court Order</u>**

**1. Identification of Review Standard**

As a preliminary matter, we address the standard of review applied by the superior court. To enable meaningful appellate review, the superior court "must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *NCJS*, 255 N.C. App. at 77, 803 S.E.2d at 689 (citation omitted). In the instant case, the court did not identify which review standard it applied. Nevertheless, "remand is not automatic when an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issues"; in such a case, "the appellate court can determine how the [superior] court *should have* decided the case upon application of the appropriate standard[ ] of review." *Id.* (cleaned up).

Here, the record on appeal permits meaningful review of "the dispositive issue in this appeal—whether the . . . Board's interpretation and application of the [zoning ordinance] warrants reversal of its ultimate decision." *Id.* Moreover, Long Properties does not allege error in the superior court's failure to identify the review standard it

employed. Consequently, "we elect not to remand this case to the superior court to identify and apply the proper review standard." *Id.*

**2. Analysis**

"A court cannot affirm the administrative action of a board by substituting its own premises in sustaining that action for those which served as the basis of the agency's action." *Godfrey v. Zoning Bd. of Adjus. of Union Cty.*, 317 N.C. 51, 63–64, 344 S.E.2d 272, 279 (1986) (cleaned up). The "reviewing court, in dealing with the determination which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency*"; where "those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Id.* at 64, 344 S.E.2d at 279–80 (emphasis added and cleaned up).

Our review of the superior court order reveals that the court committed the very error proscribed in *Godfrey*. During the hearing, the superior court expressed concern that Long Properties may not have been entitled to issuance of the development permits because the lots may not have satisfied some of the other requirements: "There is a [dearth] of evidence about the [nonconforming lot] exceptions, the -- if lots that cannot meet or do they meet the buffering requirements, the watershed requirements. . . . I think we've got an issue of a lack of findings of fact as to those other requirements." In its written order, the court found that "[n]o competent evidence was presented at the hearing before the [Board] regarding the

- 7 -

[nonconforming lot] exceptions described in Sections 9-2 and 5-3 of the [zoning ordinance]" and on this basis affirmed the Board's decision. However, this was not the issue before the Board and consequently was not the issue before the superior court on review.

The Board's Written Order reads, in part: "The resolution of this case depends on the *interpretation of the ordinance language* in conjunction with the status of the non-conforming lots not meeting the *definition* of a legal building lot . . . and the issue whether Sec[s]. 9-1 & 9-2 conflict with Sec. 5-3 of the [zoning ordinance]." (Emphases added). A memo from the zoning administrator to the mayor and city council members concerning Long Properties' appeal underscores this point: "[Long Properties] is appealing the determination of the Zoning Official in the *interpretation* of the [zoning ordinance] Article IX Section 9-2." (Emphasis added).

The issue before the Board—and thus the issue before the superior court—was the interpretation of the zoning ordinance. The question before the Board was solely one of law, as its Written Order reflects; hence, the question before the superior court was also solely one of law, as it was limited to "the grounds invoked by the agency." *Id.* at 64, 344 S.E.2d at 280 (citation omitted). Therefore, the superior court exceeded the scope of its authorized duties and its conclusions must be rejected.

Accordingly, we engage in a de novo interpretation of the zoning ordinance. *Four Seasons*, 205 N.C. App. at 76, 695 S.E.2d at 463.

## C. **Interpretation of the Zoning Ordinance**

Our Supreme Court has explained that local zoning ordinances are interpreted using ordinary principles of statutory construction. *See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 303, 554 S.E.2d 634, 638 (2001) ("Courts apply the same rules of construction when construing both statutes and municipal zoning ordinances."). "[W]hen two statutes arguably address the same issue, one in specific terms and the other generally, the specific statute controls." *85' and Sunny, LLC v. Currituck County*, 279 N.C. App. 1, 15, 864 S.E.2d 742, 750–51 (citation omitted), *disc. review denied*, 379 N.C. 685, 865 S.E.2d 858 (2021). Furthermore, "[z]oning regulations . . . cannot be construed to include or exclude by implication that which is not clearly their express terms." *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) (citation omitted).

At issue in the present case are four provisions of the zoning ordinance—Sections 5-3, 9-1, 9-2, and 12-4:

**ARTICLE V**

**APPLICATION OF REGULATIONS**

. . . .

**Section 5-3          Lot of Record**

Single Lots of Record:

When a lot has an area or width which does not conform to the dimensional requirements of the district where they are located, but such lot was of record at the time of adoption of this Ordinance or any subsequent amendment which renders such lot nonconforming, then *such lot may*

*be built upon if compliance is achieved with regard to setback dimensions and other requirements,* except lot area or width. *Lots that cannot meet the setback and buffering requirements of this Ordinance may seek a variance* from the Board of Adjustments.

. . . .

## ARTICLE IX

## NONCONFORMITIES

### Section 9-1          Purpose and Intent

If, within the districts established by this ordinance, or by amendments that may later be adopted, there exist lots, structures and use of land and structures which were lawful before this ordinance was passed or amended, but which would be prohibited under the terms of this ordinance, it is the intent of this ordinance to permit these nonconformities to continue until they are removed but not to encourage their continuance. Such nonconformities are declared by this ordinance to be incompatible with permitted uses in the districts in which they are located.

It is further the intent of this ordinance that nonconformities shall not be enlarged upon, expanded or used as grounds for adding other structures or uses prohibited elsewhere in the same district.

### Section 9-2          Nonconforming Lots of Record

Single Lots of Record

When a lot has an area which does not conform to the dimensional requirements of the district where they are located, but such lot was of record at the time of adoption of this Ordinance or any subsequent amendment which renders such lot nonconforming, then *such lot may be built upon if compliance is achieved with regard to setback dimensions, width, and other requirements*, regardless of

lot area. *Lots that cannot meet the setback, width, and/or buffering requirements of this Ordinance may seek a variance* from the Board of Adjustments.

(Emphases added). Article XII, titled "**Area, Yard and Height Requirements**," contains Section 12-4, a table which indicates, *inter alia*, that lots zoned as R-40 residential are required to have a minimum area of 50,000 square feet to be entitled to issuance of a permit to build a two-family residence. (Bold in original and capitalization omitted).

We initially address the apparent conflict between Section 9-2, which exempts a nonconforming lot of record from an *area* requirement and allows building upon the lot "if compliance is achieved with regard to setback dimensions, width, and other requirements, regardless of lot area," and Section 5-3, which exempts a nonconforming lot of record from *area and width* requirements and allows building upon the lot "if compliance is achieved with regard to setback dimensions and other requirements, except lot area or width."[1] However, these two sections have differing levels of applicability. Article V is general, whereas Article IX is specific to nonconformities, such as nonconforming lots of record. Thus, the more specific section—Section 9-2—controls in the instant case.

Turning now to the Board's interpretation concerning the nonconforming lot exceptions, the zoning administrator's testimony before the Board is instructive: "It

---

[1] Both ordinances permit an applicant to seek a variance if the lot in question cannot meet these other requirements.

was my determination that if you currently wish to place a duplex on an R[-]40 Zone lot under the current zoning, you have to have 50,000 square feet. This is 10,000 square feet more than you would need for a single-family residential structure." According to the zoning administrator, this extra square footage appeared to be intended to serve as a "buffer," although this is not stated in this portion of the zoning ordinance. He added that, as regards the nonconforming lot exceptions, if "[i]t is literally as it is written and I'm incorrect . . . [then for] any substandard lot in the City of Trinity that is zoned R[-]40 you can drop a duplex on it right now and I will have to issue your permits." When asked why Long Properties' lots were not "legal building lots," the zoning administrator responded that "they weren't legal due to not being at least forty[-]thousand square foot lots which is what [the zoning] ordinance requires"; that is, the lots did not meet the area requirement. The Board effectively adopted the zoning administrator's reasoning in the Written Order.

The zoning administrator and the Board erred by reading into the zoning ordinance requirements that do not exist. The zoning administrator interpreted the requirements of Section 12-4 as implying the definition of "legal building lots." However, as the *Yancey* canon of interpretation requires, zoning ordinances "cannot be construed to include or exclude by implication that which is not clearly their express terms." *Id.* (citation omitted). The term "legal building lots" is not defined in the zoning ordinance; nonetheless, the Board acknowledged in its Written Order that Long Properties' lots were indeed "non-conforming lots of record" according to the

zoning administrator. Therefore, Long Properties' argument that Section 9-2 applies to its nonconforming lots of record has merit.

## D. <u>Remand for Issuance of Permits</u>

The Board's decision rested on an error of law. Consequently, on remand from the superior court, the Board must issue Long Properties the permits for which it applied where Long Properties demonstrates to the Board that the lots satisfy the width, setback dimensions, and other requirements for duplexes in an R-40 zone. Where Long Properties fails to establish the lots' compliance with these requirements, it may seek variances as provided in the zoning ordinance. The Board may deny permits for lots for which variances are necessary but which it does not grant.

## III. <u>Conclusion</u>

Upon our de novo review, we conclude that the superior court failed to correct the error of law committed by the Board. Accordingly, we reverse the superior court's order affirming the decision of the Board and remand this matter to the superior court for further remand to the Board to conduct additional proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges STROUD and CARPENTER concur.

Report per Rule 30(e).